IN RE CANCELLATION OF PART OF THE WATER APPROPRIATION UNDER DOCKET 646, KNOWN AS THE BIRDWOOD IRRIGATION DISTRICT, BIRDWOOD CREEK, WATER DIVISION NO. 1-A. STATE OF NEBRASKA ET AL., APPELLEES, V. BIRDWOOD IRRIGATION DISTRICT ET AL., APPELLANTS.

46 N. W. 2d 884

Filed March 23, 1951. No. 32818.

*Edward E. Carr,* and *Baskins & Baskins,* for appellants.

*Clarence S. Beck,* Attorney General, *Bert L. Overcash,* and *Henry M. Grether,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a proceeding commenced by the Department of Roads and Irrigation to cancel a part of the water appropriation of the Birdwood Irrigation District. After notice and hearing, the department determined that a beneficial use of water had not been made upon 6,762.78 acres of land within the district, and canceled the appropriation of water for such lands. The district and a number of landowners within the district appeal.

The appropriation of water from Birdwood Creek for irrigation purposes which is now owned by the Birdwood Irrigation District was adjudicated on August 12, 1898. The department determined the date of priority to be October 21, 1893. The order described approxi-

mately 12,000 acres of land to which the appropriation was to apply and determined that the amount of the appropriation was not to exceed 100 cubic feet per second of time. The department further limited the appropriation to the capacity of the ditch and the least amount of water that experience may hereafter indicate as necessary for the production of crops in the exercise of good husbandry. The time for completing the application of water to the beneficial use indicated was fixed as of September 1, 1902. No appeal was taken from this order.

The appropriation here involved was given a priority date as of October 21, 1893. The adjudication of the water right gave to the Birdwood Irrigation District and its predecessors in interest a vested right to the use of the waters appropriated, subject to the law at the time the vested interest was acquired and such reasonable regulations subsequently adopted by virtue of the police power of the state. Enterprise Irrigation District v. Willis, 135 Neb. 827, 284 N. W. 326; State ex rel. Cary v. Cochran, 138 Neb. 163, 292 N. W. 239.

The Constitution declares the necessity of water for domestic use and for irrigation purposes in this state to be a natural want. Art. XV, § 4, Nebraska Constitution. Our statutory law on the subject of irrigation and the decisions of this court dealing therewith show a clear intention to enforce and maintain a rigid economy in the use of public waters of the state. It is the policy of the law in all the arid states to compel an economical use of the waters of natural streams. One of the very purposes of the state in the administration of public waters is to avoid waste and to secure the greatest benefit possible from the waters available for appropriation for irrigation purposes. Farmers Canal Co. v. Frank, 72 Neb. 136, 100 N. W. 286.

The appropriation for irrigation purposes here involved is clearly subject to the law existing as of its adjudicated priority date. It is a fundamental principle

of the common law that one may not divert more water, even under a valid appropriation, than he can put to a beneficial use. The Raynor Irrigation Law of 1889 provided in part: "The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose, the right ceases." Laws 1889, c. 68, art. 1, § 2, p. 504. This statute was in force on the adjudicated priority date. It is declaratory of the common law rule and sustains the contention of the department that so-called vested appropriations of water for irrigation purposes may be lost by nonuser or abandonment. The intent of the 1889 act is made clear when it declares: "No person entitled to the use of water from any such ditch or canal, must under any circumstances use more water than good husbandry requires for the crop or crops that he cultivates * * *." Laws 1889, c. 68, art. 2, § 14, p. 515. These principles were the law of this state when the adjudication of the water right before us was made. They still remain in our irrigation statutes and have become the fixed policy of the state. § 46-229, R. S. Supp., 1949. The application of water to a beneficial use operates as a condition subsequent which in fact fixes the extent of the right originally acquired.

The appellants contend that, regardless of nonuser or failure to irrigate a large portion of the lands under an appropriation, the department is without authority to cancel the water right on lands not so used. Such a construction of the powers of the department would defeat a major purpose of the department and render the nonuser and abandonment provisions of the irrigation law nugatory. The department is expressly authorized by statute, after notice and hearing, to forfeit a water right where it appears that the water appropriation has not been used for some beneficial or useful purpose, or having been so used at one time has ceased to be used for such purpose for more than three years. § 46-229.02, R. S. Supp., 1949. The constitutionality of the fore-

going statute was upheld by this court in Kersenbrock v. Boyes, 95 Neb. 407, 145 N. W. 837, and Dawson County Irrigation Co. v. McMullen, 120 Neb. 245, 231 N. W. 840. In the Kersenbrock case it was held also that the act was not invalid because it applies to both past and future appropriations. We deem these propositions as settled in this state. Consequently, where it appears that irrigation water has not been applied to lands described in an adjudicated appropriation for the statutory period of three years, such nonuser will result in the loss of the right, although the right is one that is termed a vested, adjudicated right. The policy of the law is to require a continued beneficial use of appropriated waters to avert their loss under the nonuser provisions of the irrigation statutes.

It is urged, however, that even if the department has the authority to cancel an appropriation for nonuser, it has no right to cancel a part of an appropriation for the reason that only a part of the acreage described in the adjudication has been irrigated. We do not think the position assumed by the appellants on this question is the correct one. In Smith v. Hawkins, 120 Cal. 86, 52 P. 139, it was said: "If plaintiffs could forfeit their entire right of appropriation by nonuser, equally will they be held to forfeit less than the whole by like failure. In other words, the necessary result of the principles declared on that appeal is that, no matter how great in extent the original quantity may have been, an appropriator can hold, as against one subsequent in right, only the maximum quantity of water which he shall have devoted to a beneficial use at some time within the period by which his right would otherwise be barred for nonuser. And this principle has been more explicitly declared in the recent case of Senior v. Anderson, 115 Cal. 496, where it is held that an appropriation of water by the owner of land by means of a ditch is not measured by the capacity of the ditch through which the appropriation is made, but is limited to such quantity, not ex-

ceeding the capacity of the ditch, as the appropriator may put to a useful purpose." See, also, Hewitt v. Story, 64 F. 510, 30 L. R. A. 265; Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co., 104 Utah 202, 135 P. 2d 108. The fact that many provisions of our irrigation statute came from California makes the interpretations of the California statute by the courts of that state of particular application here. Magner v. Kinney, 141 Neb. 122, 2 N. W. 2d 689. We conclude that the power to cancel the whole of an appropriation for irrigation purposes for nonuser carries with it the right to cancel a part. United States v. Tennessee & Coosa R. R. Co., 176 U. S. 242, 20 S. Ct. 370, 44 L. Ed. 452.

The foregoing is consistent with the Raynor Irrigation Law of 1889, as well as the irrigation statutes passed subsequent thereto. It integrates itself into the public policy of the state with reference to the appropriation of public waters. It is consistent also with the provisions of the appropriation as it was adjudicated in 1898. It gives effect to the constitutional provision that the necessity of water for irrigation is a public want. It in no manner changes a substantive right. It merely sustains the procedural remedy provided by the Legislature for enforcing a condition inherently in the appropriation to the effect that the rights attained thereby could be lost by nonuser. It is consistent with the theory that water may not be wasted. An appropriator will not be permitted to retain an interest in public waters, to which he has a valid appropriation, which are not put to a beneficial use. Such a rule would be contrary to the policy of the state that the necessity for water for irrigation is a public want and that the public waters of the state, available for appropriation for irrigation purposes, should be administered to secure the greatest benefit possible therefrom. An appropriator will not be permitted to retain an interest in the use of public waters which he has never put to a beneficial use, or having been once put to a beneficial use has failed for

the statutory period to continue such beneficial use. It is the express duty of the department to determine the appropriations, or parts thereof, which are subject to forfeiture for nonuser and make the waters covered thereby available to junior appropriators or new applicants. It is the duty of the department to protect the rights of any and all the appropriators of public waters. It is its duty also to see to it that the maximum amount of water may be subject to appropriation. It is enjoined to perform such duties in the fulfillment of the policy of the state with reference to its public waters as evidenced by constitutional and statutory provisions, and the interpretations of the courts of this state with reference thereto.

The record shows that the water appropriation for lands falling into several different groups was canceled. We shall deal briefly with each group. (a) There were some lands described in the adjudicated appropriation which were not within the Birdwood Irrigation District. The evidence shows that water had never been applied to these lands and consequently the water appropriation for them was properly canceled. (b) There were some lands not included in the adjudicated appropriation that were below the Birdwood Irrigation District canal which were alleged to be within the district. The record shows that these lands were not included in the lands described in the adjudicated appropriation, nor were they subsequently brought into the district in the manner provided by statute. None of the waters included in the appropriation of the Birdwood Irrigation District therefore were available to such lands. Such lands may not be properly considered in determining the acreage entitled to water under the appropriation of the Birdwood Irrigation District. (c) There are lands lying above the canal of the Birdwood Irrigation District which were not described or otherwise included in the adjudicated appropriation, nor subsequently brought into the district. The evidence

shows they were irrigated for a number of years last past by pumping from the canal of the irrigation district. The department correctly determined that none of the waters included in the adjudicated appropriation were for these lands and could not therefore be included in determining the acreage to which the adjudicated appropriation applied that had been put to a beneficial use and had not been lost by nonuser. (d) There were lands included in the adjudicated appropriation which are outside the district for which water is claimed. The record shows that this land was not irrigated prior to 1944, but that it had been irrigated about two years prior to the hearing. The record shows further that the owner made application to the department to include these lands within the district, but the application was denied. This was a final determination by the department from which an appeal should have been taken if the owner felt that the department was in error. The land was not within the district and any claim to water by virtue of the adjudicated appropriation was lost thereby. The order of the department with reference thereto appears to be correct.

The order made by the department cancels the appropriation for approximately 200 acres belonging to Harry Brodbeck. This land lies within the Birdwood Irrigation District and was included in the adjudicated appropriation now belonging to the Birdwood Irrigation District. The record shows that the only issue here is whether the department correctly canceled the water rights to that part of the Brodbeck lands described as Lots 1 and 2 in the north half of the northwest quarter of Section 9, Township 14 North, Range 31 West of the 6th P. M., and Lots 1, 2, 3, and 4 in Section 8, Township 14 North, Range 31 West of the 6th P. M. The lands in Section 9 were excluded because a beneficial use of water had not been made upon them. Those in Section 8 were excluded because it is shown by the evidence that the lands had not been irrigated for three

years. That the lands in question in Section 8 are irrigable lands was judicially determined in Birdwood Irrigation District v. Brodbeck, 148 Neb. 824, 29 N. W. 2d 621. The evidence of the appellant Brodbeck is that the lands in Section 9 are irrigable and that waters in the adjudicated appropriation have been put to a beneficial use on this land. The burden of proof to establish nonuser is upon the department. We find no evidence properly in the record to sustain the department's order with respect thereto. There are records and letters in the bill of exceptions, tending to sustain the department's action, which were not put in evidence at the hearing. They are not properly a part of the bill of exceptions, and the motion of appellants to strike them from the bill of exceptions should have been sustained. A bill of exceptions properly includes all the evidence offered at the hearing. Evidence not so offered has no place in the bill of exceptions. § 46-210, R. S. 1943.

It appears, therefore, that the evidence will not sustain the department in canceling the water right appurtenant to Lots 1 and 2 in Section 9. As to Lots 1, 2, 3, and 4, in Section 8, the appellant Brodbeck offered no evidence that it had been irrigated within three years prior to the hearing. The report of the department engineer appearing in the record indicates that it had not been so used. We think the action of the department was correct under the provisions of section 46-229.04, R. S. Supp., 1949, providing: "At such hearing the verified report of the district superintendent, water commissioner or engineers of the department shall be prima facie evidence for the forfeiture and annulment of such water appropriation. If no one appears at the hearing, such water appropriation shall be declared forfeited and annulled. If some one interested appears and contests the same, the department shall hear evidence, and if it appears that such water has not been put to a beneficial use, or has ceased to be used for such purpose for more than three years, the same shall be declared canceled

and annulled." No contest having been made as to the lands in Section 8, the department was warranted in canceling the water right to such lands.

As to the appellant Brodbeck, we hold that the order canceling the water right to his lands in Section 9, consisting of approximately 50 acres, is not sustained by the evidence. The order of the department as to the lands in Section 8 is correct.

Certain of the appellants contend that they have been taking water from the Birdwood Irrigation District canal and for many years have applied it on lands not included in those described in the original appropriation. It is asserted that such persons have thereby obtained a right to continue to use such waters. While it is true that prior to the Irrigation Act of 1895 a freedom to change the location of the use apparently existed, no such right now exists except by permission of the Department of Roads and Irrigation. Such requirement does not divest the right. It is a valid exercise of the police power of the state in the regulation of its public waters to insure an orderly administration of such waters, to eliminate waste, and to secure the greatest benefit possible from waters available for irrigation purposes. But any such right of change in locational use, with the approval of the Department of Roads and Irrigation, has always been subject to qualification in the case of a canal company organized to carry and distribute irrigation water which has acquired an appropriation for the purpose of serving particular lands. In such a situation the rights of the canal company, which is in the nature of a public service corporation, with respect to the waters appropriated even though acquired prior to 1895, have become dedicated to the use of the lands which the canal was constructed to serve and to which such waters have been applied. The canal company cannot, therefore, deprive landowners of the continuing benefit of this dedicated use without their express consent and the approval of irrigation

authorities of the state. United States v. Tilley, 124 F. 2d 850; Farmers & Merchants Irrigation Co. v. Gothenburg Water Power & Irrigation Co., 73 Neb. 223, 102 N. W. 487. The purpose of an irrigation district or canal company is to furnish water for irrigation purposes to be usefully and beneficially applied to land within the district. Lincoln & Dawson County Irrigation Dist. v. McNeal, 60 Neb. 613, 83 N. W. 847; Platte Valley Public Power & Irrigation Dist. v. County of Lincoln, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412. We hold, therefore, that one can gain no right to the use of waters of an irrigation district or canal company merely by using such waters for irrigation purposes for a period of time. The Raynor Irrigation Act of 1889 provided that the place of intended use be specified in an appropriation. Laws 1889, c. 68, art. 1, § 8, p. 505. To gain a right, one whose lands were not described as being a beneficiary of the use can gain such a right only in the manner provided by Chapter 46, R. S. 1943, and amendments thereto. No action having been taken to bring such lands within the district, the claims of persons outside the district based on the fact that they have used waters within the district's appropriation are without merit. The statute providing the method for bringing lands within the district for the purpose of sharing in its appropriation of water for irrigation purposes is exclusive.

The original appropriation was for an amount of water not exceeding 100 second-feet which was necessary for the production of crops in the exercise of good husbandry on the 12,000 acres described in the application. The department reduced the amount of the appropriation in proportion that the amount of the acreage lost bore to the total acreage included in the adjudicated appropriation. No objection was made to this method of determining the quantity of water to which the Birdwood Irrigation District was entitled after the acreage cancellations for nonuser were made. Consequently,

64

there is no issue before the court on this point. The number of acres in the district to which water had been beneficially applied was determined to be 5,237.22. To this the 50 acres in Section 9, as hereinbefore determined, should be added, thereby increasing the amount to 5,287.22 acres. The appropriation of the Birdwood Irrigation District from Birdwood Creek in the amount of 43.64 second-feet, with priority of October 21, 1893, should be revised upward to include water for the Brodbeck lands in Section 9. The order of the department is affirmed as so modified.

MODIFIED AND AFFIRMED.