In re Complaint of Central Nebraska Public Power and Irrigation District.

Central Nebraska Public Power and Irrigation District (CNPPID), appellant, v. The persons identified as registered irrigation well owners located in the Platte River watershed as listed in the Department of Natural Resources' database upstream of CNPPID's diversion dam and Nebraska Department of Natural Resources, appellees.

699 N.W.2d 372

Filed July 1, 2005. No. S-04-836.

Michael C. Klein, of Anderson, Klein, Swan & Brewster, for appellant.

Jon Bruning, Attorney General, David D. Cookson, and Justin D. Lavene for appellee Nebraska Department of Natural Resources.

Steven C. Smith, of Pahlke, Smith, Snyder, Petitt & Eubanks, a general partnership, for amici curiae Pathfinder Irrigation District et al.

Robert J. McCormick for amicus curiae The Tri-County Water Users Association.

Donald G. Blankenau and Jaron J. Bromm, of Fennemore Craig, P.C., for amicus curiae Nebraska Groundwater Management Coalition.

LeRoy W. Sievers, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for amici curiae Nebraska Water Users, Inc., and Nebraska State Irrigation Association.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Central Nebraska Public Power and Irrigation District (Central) filed an amended complaint with the Nebraska Department of Natural Resources (Department) alleging that "registered irrigation well owners located in the Platte River watershed" were diverting waters of the Platte River without having first obtained appropriations from the Department. Central requested that the irrigation well owners be ordered to cease such "unpermitted diversions." The Department issued an order summarily dismissing Central's amended complaint for lack of jurisdiction to grant the relief requested. Central appealed.

## SCOPE OF REVIEW

■ On questions of law, which include the meaning of statutes, a reviewing court is obligated to reach its conclusions independent of the legal determinations made by the director of the Department. See *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004).

## FACTS

Central is a political subdivision of the State of Nebraska organized pursuant to Neb. Rev. Stat. § 70-601 et seq. (Reissue 2003 & Cum. Supp. 2004). It owns and operates a system of reservoirs, canals, and laterals utilized for the purpose of hydropower production, delivery of irrigation water, recreation, and environmental enhancement. One of the principal features of this system is Lake McConaughy.

Central's amended complaint alleged that persons identified as registered irrigation well owners located in the Platte River watershed were diverting waters of the Platte River and its tributaries without first obtaining appropriations from the Department. Central asserted that these unpermitted diversions caused an average annual depletion of approximately 100,000 acre feet which would otherwise be available for Central's use pursuant to its appropriations. The complaint alleged that the ground water users were subject to the prior appropriations doctrine set forth in Neb. Const. art. XV, § 6.

In its prayer for relief, Central requested that the Department order the well owners to cease the unpermitted diversions,

declare Central's appropriations prior and superior to such diversions, take all necessary and appropriate actions to protect Central's appropriations, and enforce the regulation of unpermitted diversions.

On July 1, 2004, the director of the Department issued an order dismissing the amended complaint for lack of jurisdiction to grant the relief requested. The director concluded as to the issue presented that the Department's legal authority was limited to working cooperatively with the natural resources districts to address conflicts between surface water appropriators and ground water users by jointly developing and implementing integrated management plans. The order stated: "The Legislature has not given the Department . . . any independent authority to regulate or administer ground water users for the benefit of surface water appropriators." Central timely perfected an appeal.

## ASSIGNMENTS OF ERROR

Central's assignments of error may be summarized and restated as follows: The Department erred in finding that it was without jurisdiction to "regulate or administer" ground water users for the benefit of surface water appropriators.

## ANALYSIS

### ISSUE PRESENTED

The issue presented is whether the Department has jurisdiction to adjudicate disputes between surface water appropriators and ground water users. On questions of law, which include the meaning of statutes, a reviewing court is obligated to reach its conclusions independent of the legal determinations made by the director of the Department. See *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004).

### BACKGROUND OF IRRIGATION LAW IN NEBRASKA

The system of irrigation in Nebraska has its foundation in statutory enactments and constitutional provisions. See *Drainage District No. 1 v. Suburban Irrigation District*, 139 Neb. 460, 298 N.W. 131 (1941). Rights of irrigation in the state exist only as they have been created and defined by the law and are therefore limited in their scope by the language of their creation. *Id.* The first enactment relating to irrigation was 1889 Neb. Laws,

ch. 68, p. 503, entitled " 'An act to provide for water rights and irrigation, and to regulate the right to the use of water for agricultural and manufacturing purposes.' " 139 Neb. at 468, 298 N.W. at 135. This act provided: " 'The right of the use of running water, flowing in a river or stream or down a canyon, or ravine, may be acquired by appropriation by any person or persons, company or corporation organized under the laws of the state of Nebraska . . . .' " *Id.*

Subsequently, 1895 Neb. Laws, ch. 69, §§ 42-43, p. 260, provided:

> " 'Sec. 42. The water of every natural stream not heretofore appropriated, within the state of Nebraska, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as heretofore provided.
>
> " 'Sec. 43. The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purposes . . . .' "

*Drainage District No. 1 v. Suburban Irrigation District*, 139 Neb. at 468, 298 N.W. at 135.

In 1920, the Nebraska Constitutional Convention amended Neb. Const. art. XV, §§ 4 through 6, to mimic the previously enacted legislation:

> " 'Sec. 4. *Water a Public Necessity.* The necessity of water for domestic use and for irrigation purposes in the state of Nebraska is hereby declared to be a natural want.
>
> " 'Sec. 5. *Use of Water Dedicated to People.* The use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes, subject to the provisions of the following section.
>
> " 'Sec. 6. *Right to Divert Unappropriated Waters.* The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose . . . .' "

(Emphasis in original.) *Drainage District No. 1 v. Suburban Irrigation District*, 139 Neb. at 469, 298 N.W. at 136.

In *Drainage District No. 1*, we first acknowledged that certain kinds of water were not subject to appropriation. There, the defendant irrigation district sought the right by eminent domain to place obstructions or dams in the plaintiff's drainage ditches. One of the controlling questions was from what source and how did the irrigation district become vested with power to use and appropriate the water out of such drainage ditches. From the history of our irrigation laws and constitutional provisions, the court concluded that the right of appropriation for irrigation was limited to the waters of the " 'natural streams' of the state." *Id.* at 470, 298 N.W. at 136. The source of the waters contained in the drainage ditches was low-lying land which was too wet to farm, over which surface waters were diffused, and through which subterranean waters percolated. The court concluded that the drainage ditches were not natural streams or natural watercourses and that their inherent nature excluded them from the class or kind of waters to which state laws of appropriation were applicable. Because such waters were not subject to appropriation for irrigation purposes, the attempt to secure them for the irrigation district by exercising the right of eminent domain was unauthorized. *Id.*

Subsequent to *Drainage Dist. No. 1*, we recognized the potential conflicts between ground water users and surface water appropriators in *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 140 N.W.2d 626 (1966). In that case, an order by the director of Water Resources authorized Omaha's Metropolitan Utilities District to supplement its water supply with ground water. Pursuant to Neb. Rev. Stat. § 46-638 (Cum. Supp. 1963), the director was authorized to grant permits to cities to develop ground water supplies in the area served by the city. The use of ground water pursuant to a permit was governed by Neb. Rev. Stat. § 46-613 (Cum. Supp. 1963).

In discussing the history of irrigation law, the court noted that it was not until 1957 that the Legislature undertook any form of ground water regulation. Such legislation provided for registration of irrigation wells, spacing of such wells, and preferences in the use of ground water. *Metropolitan Utilities Dist. v. Merritt Beach Co., supra.* In 1959, the Legislature provided for the creation of ground water conservation districts. *Id.* In 1963, the

Legislature defined ground water and required that a permit be obtained to pump underground water within 50 feet of the bank of a natural stream. *Id.* At that time, ground water was defined by Neb. Rev. Stat. § 46-635 (Cum. Supp. 1963) as that water which occurs or moves, seeps, filters, or percolates through the ground under the surface of the land.

In recognizing the beginning of conflicts between ground water and surface water rights, we stated:

> [A]cts of the Legislature were mere beginnings in the exercise of possible control and regulation of ground water. While the rights of appropriators to the use of water from rivers and streams have been protected over the years, rights in the use of ground water have not been determined nor protected, nor the public policy with reference to the use of such underground waters legislatively declared. The difficulties in administering dual conflicting principles, and fixing the rights of users thereunder, are readily apparent.

*Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. at 799, 140 N.W.2d at 636.

Recently, in *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005), we addressed whether a surface water appropriator had a claim against a ground water user for interference with a surface water appropriation. Spear T Ranch (Spear T) had filed a complaint in the district court, alleging that it had surface water appropriations on Pumpkin Creek and that certain ground water users who had irrigation wells within the boundaries of the Pumpkin Creek basin were converting Spear T's surface water rights to their own use without compensating Spear T. Spear T alleged it would be irreparably harmed if the ground water users continued to use their irrigation wells. It sought compensation for the value of the surface water appropriations allegedly taken by such ground water users and, in the alternative, special damages for the value of the water rights and injunctive relief.

Spear T argued that because the water in question was hydrologically connected and because Spear T had a prior surface water appropriation, it had priority to the water in the Pumpkin Creek basin. It asked this court to apply legislatively created surface water priorities to ground water use without considering existing common-law rules. We declined to apply the statutory

surface water appropriation rules to conflicts between surface water appropriators and ground water users. While we accepted as true that the water in question was hydrologically connected, we pointed out that water rarely runs in a true underground stream. *Id.*

■ We found no statutory authority or case law that supported applying surface water appropriations to ground water. While we recognized that most legislatures in western states had developed comprehensive appropriation systems which were overseen by administrative agencies, we pointed out that in Nebraska, the Legislature has not developed an appropriation system that addresses direct conflicts between users of surface water and ground water that is hydrologically connected. *Id.*

We recognized that the prior appropriation rule which Spear T advocated would give first-in-time surface water appropriators the right to use whatever water they wanted to the exclusion of later-in-time ground water users. We pointed out that this rule could have the effect of shutting down all the wells in any area where surface water appropriations were hydrologically connected to ground water. *Id.*

## CENTRAL'S ARGUMENT

Central claims that the Nebraska Constitution charges the Department with regulating all waters of the state based upon the doctrine of prior appropriation. It relies upon Neb. Const. art. XV, § 6, and also argues that the Department is charged with administering all water of the state through a number of statutory provisions. Specifically, Central notes Neb. Rev. Stat. § 61-206(1) (Cum. Supp. 2004), which provides: "The Department . . . is given jurisdiction over all matters pertaining to water rights for irrigation, power, or other useful purposes except as such jurisdiction is specifically limited by statute." In addition, Neb. Rev. Stat. § 46-226 (Reissue 2004) states: "The department shall make proper arrangements for the determination of priorities of right to use the public waters of the state and determine the same. The method of determining the priority and amount of appropriation shall be fixed by the department."

Central asserts that Neb. Rev. Stat. § 61-201 et seq. (Reissue 2003 & Cum. Supp. 2004) grants authority to the Department and

that these statutes contain no limitation upon the Department's jurisdiction over matters concerning water rights.

## DEPARTMENT'S ARGUMENT

The Department argues that it does not have authority to regulate ground water users for the benefit of surface water appropriators. It emphasizes that the jurisdiction delegated by § 61-206(1) is limited by the phrase "except as such jurisdiction is specifically limited by statute." Brief for appellee Department at 7. It argues that Neb. Const. art. XV, § 6, refers only to "natural stream[s]" and that this is a reference to surface water only. Brief for appellee Department at 6.

The Department also relies upon Neb. Rev. Stat. § 46-703(5) (Reissue 2004), which provides: "The Department . . . is responsible for regulation of surface water resources . . . ." The Department does not claim that it lacks statutory authority to regulate surface water, but, rather, that the regulation of ground water users is beyond its authority. It cites § 46-703(3), which provides:

Natural resources districts . . . are the preferred entities to regulate, through ground water management areas, ground water related activities which are contributing to or are, in the reasonably foreseeable future, likely to contribute to conflicts between ground water users and surface water appropriators or to water supply shortages in fully appropriated or overappropriated river basins, subbasins, or reaches.

Based upon the above statutes, the Department asserts that the regulation of ground water has been statutorily delegated to the natural resources districts.

## RESOLUTION

In *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005), we addressed whether a surface water appropriator had a claim against a ground water user for interference with a surface water appropriation. The issue of the Department's jurisdiction to hear disputes between surface water appropriators and ground water users was not presented; however, the issue is now squarely before us.

Nebraska has two separate systems for the distribution of its water resources: One allocates surface water, and the other

allocates ground water. *Id.* The Department regulates surface water appropriators, see § 61-201 et seq., and ground water users are statutorily regulated by the natural resources districts through the Nebraska Ground Water Management and Protection Act, see Neb. Rev. Stat. § 46-701 et seq. (Reissue 2004).

The Nebraska Constitution does not address the use of ground water, and historically, the regulation of ground water has been governed by the rule of reasonable use. In *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 800, 140 N.W.2d 626, 636-37 (1966), we stated: "Without any declaration of public policy as to the use of underground waters other than the constitutional declaration that they are a natural want, we adhere to the rule that such waters must be reasonably used for a beneficial purpose without waste." *Metropolitan Utilities Dist.* impliedly recognized that ground water was included in article XV, § 4 ("water . . . declared to be a natural want"), but was not included in article XV, § 5 ("the water of every natural stream").

After the constitutional amendments in 1920, the Legislature did not address any form of ground water regulation until 1957. By then, the difficulties in administering dual conflicting principles between the rights of appropriators and the rights in the use of ground water and in fixing the rights of users had become readily apparent. See *Metropolitan Utilities Dist. v. Merritt Beach Co., supra.*

In this case, we are presented with a question of law, and we are obligated to reach a conclusion independent of the legal determinations made by the director of the Department. See *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004). We conclude that the Department has no independent authority to regulate ground water users or administer ground water rights for the benefit of surface water appropriators. We do not address what relief, if any, Central might obtain under § 46-701 et seq.

This conclusion is clearly supported by our decision in *Spear T Ranch v. Knaub, supra*, in which we declined to apply legislatively created surface water priorities to ground water use for the reason that no statutory authority or case law supported the rationale of applying the rules relating to surface water appropriations to ground water use. We recognized that the Legislature has not

developed an appropriation system that addresses direct conflicts between users of surface water and ground water that is hydrologically connected. We noted that the lack of an integrated system was reinforced by the fact that different agencies regulate ground water and surface water.

## CONCLUSION

For the reasons set forth herein, the decision of the Department's director, which dismissed Central's amended complaint for lack of jurisdiction to grant the relief requested, is affirmed.

AFFIRMED.