Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/10/2017 09:08 AM CST

Greg Hill of Furnas County et al., appellants, v.
State of Nebraska and Nebraska Department of
Natural Resources, a state agency, appellees.

___ N.W.2d ___

Filed March 10, 2017.     Nos. S-16-558, S-16-560.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Property.** A takings analysis begins with an examination of the nature of the owner's property interest.
4. **Property: Title: Statutes.** No compensation is owed in a takings claim if the State's affirmative decree simply makes explicit what already inheres in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership.
5. **Irrigation.** Rights of irrigation in Nebraska exist only as they have been created and defined by the law and are therefore limited in their scope by the language of their creation.
6. **Irrigation Districts: Waters.** The adjudication of a water right gives to an irrigation district and its predecessors in interest a vested right to the use of the waters appropriated, subject to the law at the time the vested interest was acquired and such reasonable regulations subsequently adopted by virtue of the police power of the state.
7. **Waters: Irrigation.** The law gives to every citizen of the state the right to appropriate for beneficial purposes the unappropriated public waters of the state, and it protects him or her in the enjoyment of this appropriation after his or her right is once vested. An appropriator takes this right, however, subject to the rights of all prior and

subsequent appropriators, and he or she cannot infringe upon their rights and privileges.

8. **States: Federal Acts.** A compact, having received Congress' blessing, counts as federal law.

9. **Agriculture: Crops: Irrigation.** The inability to withdraw enough water to grow a crop does not amount to being deprived of all economic use of the land.

10. **Administrative Law: Waters: Natural Resources Districts.** Nebraska has two separate systems for the distribution of its water resources: One allocates surface water, and the other allocates ground water. The Department of Natural Resources regulates surface water appropriators, see Neb. Rev. Stat. § 61-201 et seq. (Reissue 2009 & Cum. Supp. 2016), and ground water users are statutorily regulated by the natural resources districts through the Nebraska Ground Water Management and Protection Act, see Neb. Rev. Stat. § 46-701 et seq. (Reissue 2009 & Cum. Supp. 2016).

11. **Administrative Law: Waters: Jurisdiction.** Neb. Rev. Stat. § 46-715 (Cum. Supp. 2016) limits the Department of Natural Resources' jurisdiction to surface water.

Appeals from the District Court for Furnas County: JAMES E. DOYLE IV, Judge. Affirmed.

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellants.

Douglas J. Peterson, Attorney General, Justin D. Lavene, Emily K. Rose, and Kathleen A. Miller for appellees.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

In 2013 and 2014, the Nebraska Department of Natural Resources (DNR) issued orders and sent closing notices to holders of surface water permits for natural flow and storage in the Republican River Basin (Basin). Appropriators Greg Hill, Brent Coffey, James Uerling, and Warren Schaffert, representing themselves and a class of farmers who irrigate with water delivered by the Frenchman-Cambridge Irrigation District

(FCID), subject to Nebraska's allocation of water under the Republican River Compact (Compact), filed suit, alleging two regulatory takings claims against the State of Nebraska and the DNR.

The district court consolidated the claims for the 2013 and 2014 crops, dismissed both claims, and denied the appropriators' requests for leave to amend. The appropriators appeal. We affirm.

We find that the Compact, as federal law, supersedes the appropriators' property interests. We further find that the DNR does not have a duty to regulate ground water; thus, a failure by the DNR to regulate ground water pumping that affects the Basin does not give rise to a cause of action for inverse condemnation.

## II. BACKGROUND

Under the Nebraska Ground Water Management and Protection Act, the DNR is required to conduct an annual forecast to determine whether the State's projected water supply from the Basin and projected consumption is sufficient to comply with the Compact.[1] The DNR conducted such a forecast on January 1, 2013, and again on January 1, 2014. The DNR's forecasts for both years indicated that the State's consumption would exceed its allocation under the Compact. Therefore, in each of those years, the DNR issued an order referred to as a "Compact Call" in the Basin and issued closing notices on all natural flow and storage permits.

The FCID owns water rights for surface water natural flow within the Basin for irrigation purposes. The appropriators allege that as a result of the DNR's orders to close the natural waterflow and preclude the release of storage water, "'the entirety of FCID's surface water appropriation bypassed [the appropriators] and was diverted for the public use of satisfying Nebraska's obligation to the state of Kansas under the Compact.'"

---

[1] See Neb. Rev. Stat. § 46-715(6) (Cum. Supp. 2016).

The appropriators brought these actions on behalf of themselves and a class of water users consisting of "[a]ll FCID water users in 2013 [and 2014] who did not receive their full water allocation supply due to the acts, omissions, and takings of [the State and the DNR] and who suffered damages due to diminished or eliminated crop production yields of growing crops." In their complaints, the appropriators alleged that each holds prior appropriation rights to surface water and that in each crop year, there was available surface water within Nebraska's allocated share of the Basin's waters which was not needed to meet Nebraska's obligations under the Compact. The appropriators further alleged that the available water was taken from the appropriators and given to Kansas, in excess of the requirements of the Compact, and constituted inverse condemnation of their water rights.

### 1. BASIN "INTERSTATE COMPACT"

Nebraska, the states of Kansas and Colorado, and the United States of America are parties to the Compact. The FCID and all class members own surface water appropriations allowing diversion of surface water from the Basin for beneficial use. The Basin has been the subject of the Compact since 1943.

In *Kansas v. Nebraska*,[2] the U.S. Supreme Court described the river:

> The Republican River originates in Colorado; crosses the northwestern corner of Kansas into Nebraska; flows through much of southwestern Nebraska; and finally cuts back into northern Kansas. Along with its many tributaries, the river drains a 24,900-square-mile watershed, called the Republican River Basin.

The U.S. Supreme Court described the Compact as

> apportion[ing] among the three States the "virgin water supply originating in" . . . the . . . Basin. . . . "Virgin

---

[2] *Kansas v. Nebraska*, ___ U.S. ___, 135 S. Ct. 1042, 1049, 191 L. Ed. 2d 1 (2015).

water supply," as used in the Compact, means "the water supply within the Basin," in both the River and its tributaries, "undepleted by the activities of man." Compact Art. II. The Compact gives each State a set share of that supply—roughly, 49% to Nebraska, 40% to Kansas, and 11% to Colorado—for any "beneficial consumptive use." *Id.*, Art. IV; see Art. II (defining that term to mean "that use by which the water supply of the Basin is consumed through the activities of man"). In addition, the Compact charges the chief water official of each State with responsibility to jointly administer the agreement. See *id.*, Art. IX. Pursuant to that provision, the States created the Republican River Compact Administration (RRCA). The RRCA's chief task is to calculate the Basin's annual virgin water supply by measuring stream flow throughout the area, and to determine (retrospectively) whether each State's use of that water has stayed within its allocation.[3]

In 2002, the Compact was modified before the U.S. Supreme Court via a "Final Settlement Stipulation" (FSS) approved by the Court.[4] Under the FSS, the parties agreed to use the Compact's administration accounting procedures and the ground water model to determine Nebraska's compliance with the Compact. Based on those accounting procedures, Nebraska must use 5-year averaging in normal allocation years and 2-year averaging during "water short" years. Nebraska is obligated by the Compact to limit its consumption of the Basin's waters to its annual allotment.

After the FSS was adopted, the Nebraska Legislature enacted the Nebraska Ground Water Management and Protection Act (hereinafter Act).[5] Under the Act, the DNR and the Basin's three natural resources districts "shall jointly develop an

---

[3] *Id.*

[4] *Id.*, 135 S. Ct. at 1050.

[5] See Neb. Rev. Stat. § 46-701 et seq. (Reissue 2010 & Cum. Supp. 2016).

integrated management plan."[6] And, "[i]n developing an integrated management plan, the effects of existing and potential new water uses on existing surface water appropriators and ground water users shall be considered."[7] The Act also requires that the "ground water and surface water controls proposed for adoption in the integrated management plan . . . (b) be sufficient to ensure that the state will remain in compliance with applicable state and federal laws and with any applicable interstate water compact or decree . . . ."[8]

The Act further requires that under the monitoring plans imposed by the Act, the DNR must consult with the natural resources districts to ensure compliance with the Compact. In addition, the DNR shall

> forecast on an annual basis the maximum amount of water that may be available from streamflow for beneficial use in the short term and long term in order to comply with the requirement of subdivision (4)(b) of this section [the Compact]. This forecast shall be made by January 1, 2008, and each January 1 thereafter.[9]

## 2. RELEVANT SECTIONS OF NEBRASKA CONSTITUTION

The appropriators rely on the following sections of the Nebraska Constitution.

Neb. Const. art. I, § 21: "The property of no person shall be taken or damaged for public use without just compensation therefor."

Neb. Const. art. XV, § 4: "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want."

---

[6] § 46-715(1)(a).

[7] § 46-715(2).

[8] § 46-715(4).

[9] § 46-715(6).

Neb. Const. art. XV, § 5: "The use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes, subject to the provisions of the following section."

Neb. Const. art. XV, § 6:

The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the water for domestic purposes shall have preference over those claiming it for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes. Provided, no inferior right to the use of the waters of this state shall be acquired by a superior right without just compensation therefor to the inferior user.

## 3. PROCEDURAL BACKGROUND

### (a) District Court Actions

The appropriators filed their initial action with respect to the 2013 crop year in July 2014. The operative complaint as to that crop year was filed on April 10, 2015. On October 30, 2015, the appropriators filed a complaint with respect to the 2014 crop year.

Other than the crop years at issue, for our purposes, both complaints were identical and alleged that (1) water was taken from the appropriators which was within Nebraska's allocation under the Compact, subject to capture in the Basin's streams, not required or used for compliance with the Compact, and not taken for consumptive beneficial use for any superior or prior legal use and (2) water was taken from the appropriators as a result of the DNR's failure to curtail excessive ground water

pumping which has depleted the Basin's streams by preventing water from reaching them. The appropriators claimed they suffered a loss of crop production as a result of the DNR's actions and omissions.

On April 30, 2015, the State and the DNR filed a motion to dismiss the appropriators' amended complaint regarding the 2013 crop year. On September 28, the court entered an order denying in part and in part sustaining the State and the DNR's motion to dismiss. On October 28, the State and the DNR filed a motion for clarification and/or a motion for reconsideration and a motion to extend the time to answer.

### (b) May 19, 2016, Order
of Dismissal

A hearing on various outstanding motions was held January 14, 2016. On May 19, the district court issued its consolidated order. As relevant, that order first vacated that portion of its September 28, 2015, order denying the State and the DNR's motion to dismiss, then granted the State and the DNR's motions to dismiss both of the appropriators' causes of action.

### III. ASSIGNMENTS OF ERROR

The appropriators assign, restated and consolidated, that the trial court erred in holding that (1) the DNR's streamflow administration under the Compact was not a taking and that thus, the regulatory action did not interfere with a legitimate property interest under Neb. Const. art. I, § 21, and art. XV, § 6, and (2) the DNR did not have a duty to regulate ground water in these cases.

### IV. STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo.[10] When reviewing an order dismissing a

---

[10] *Walentine, O'Toole v. Midwest Neurosurgery*, 285 Neb. 80, 825 N.W.2d 425 (2013).

complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[11]

## V. ANALYSIS

### 1. Whether DNR's Streamflow Administration Resulted in Taking Under Neb. Const. art. I, § 21, and art. XV, § 6

The appropriators argue that their property rights are superior to the Compact and that the State's regulation amounts to a permanent physical invasion. We reject both of these assertions.

#### (a) Nature of Appropriators' Property Interests

We first address the appropriators' allegation that their property rights are superior to the Compact. During oral argument, the appropriators maintained that they hold prior appropriation rights to use the water and that those rights "do not refer to any Compact" and "are not conditioned on changes or compliance in a Compact that didn't exist" at the time the water use permits were issued. We conclude that the appropriators' rights to use the water are subject to the Compact and are thus not a compensable property interest when the right to use is limited to ensure Nebraska's compliance under the Compact.

The appropriators' arguments on appeal are based on the assumption that the appropriators have compensable property rights. But because we conclude that the appropriators do not have such rights, their takings argument must fail.

[3-7] A takings analysis begins with an examination of the nature of the owner's property interest.[12] No compensation is owed in a takings claim if the State's affirmative decree simply

---

[11] *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013).

[12] See *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992).

makes explicit what already inheres in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership.[13] "Rights of irrigation in the state exist only as they have been created and defined by the law and are therefore limited in their scope by the language of their creation."[14]

> The adjudication of the water right gave to the [irrigation district] and its predecessors in interest a vested right to the use of the waters appropriated, subject to the law at the time the vested interest was acquired and such reasonable regulations subsequently adopted by virtue of the police power of the state.[15]

Additionally,

> [t]he law gives to every citizen of the state the right . . . to appropriate for beneficial purposes the unappropriated public waters of the state, and it protects him in the enjoyment of this appropriation after his right is once vested. He takes this right, however, subject to the rights of all prior and subsequent appropriators, and he cannot infringe upon their rights and privileges.[16]

*Hinderlider v. La Plata Co.*[17] is instructive. In that case, the plaintiff owned a ditch by which it diverted water from the La Plata River in Colorado for irrigation, but the flow was altered by the state to comply with an interstate compact. The State of Colorado shut the headgate of the plaintiff's ditch pursuant to the requirements of the La Plata River Compact entered into by Colorado and New Mexico. The compact

---

[13] See *id.*

[14] *In re Complaint of Central Neb. Pub. Power*, 270 Neb. 108, 111, 699 N.W.2d 372, 375 (2005).

[15] *State v. Birdwood Irrigation District*, 154 Neb. 52, 55, 46 N.W.2d 884, 887 (1951).

[16] *Farmers Canal Co. v. Frank*, 72 Neb. 136, 158, 100 N.W. 286, 294 (1904).

[17] *Hinderlider v. La Plata Co.*, 304 U.S. 92, 58 S. Ct. 803, 82 L. Ed. 1202 (1938).

provided that each state should receive a definite share of water, but that when the flow of the river was low, the "use of the waters may be so rotated between the two States."[18]

The *Hinderlider* Court held that the plaintiff's "right adjudicated by the decree" for water apportionment from the river was a "property right."[19] But the Court held that "the Colorado decree could not confer . . . rights in excess of Colorado's share of the water of the stream; and its share was only an equitable portion thereof."[20] Thus, "the apportionment made by the [c]ompact cannot have taken . . . any vested right."[21] The Court further determined that "the apportionment is binding upon the citizens of each State and all water claimants, even where the State had granted the water rights before it entered into the compact."[22]

Also instructive is *Badgley v. City of New York.*[23] There, the Second Circuit relied on *Hinderlider* and held that a state's administration of water in order to comply with a water compact precluded damage claims for diminished waterflow. The court reasoned that awarding damages to riparian right owners was inappropriate because such "would hobble or possibly even destroy the effect of Supreme Court decrees or Congressionally approved interstate water compacts by subjecting those who rely upon the provisions of the decrees or interstate compacts to unreasonable damage burdens."[24] Moreover, the result would be "inherently inconsistent with the supremacy of the Supreme Court's decree of equitable apportionment."[25]

---

[18] *Id.*, 304 U.S. at 97.

[19] *Id.*, 304 U.S. at 102.

[20] *Id.*

[21] *Id.*, 304 U.S. at 108.

[22] *Id.*, 304 U.S. at 106.

[23] *Badgley v. City of New York*, 606 F.2d 358 (2d Cir. 1979).

[24] *Id.* at 366.

[25] *Id.*

This court has addressed similar situations in regard to ground water. In *Spear T Ranch v. Knaub*,[26] this court addressed a dispute over the depletion of stream water due to ground water pumping. We held that "[a] right to appropriate surface water . . . is not an ownership of property. Instead, the water is viewed as a public want and the appropriation is a right to use the water."[27] The court held that that the plaintiff had no action in conversion or trespass, "'since the plaintiff has no private property interest in groundwater, at least not prior to capture.'"[28]

In *Bamford v. Upper Republican Nat. Resources Dist.*,[29] this court held that a natural resources district's cease and desist order preventing landowners and tenant farmers from withdrawing ground water from their wells until issuance of additional allocation did not amount to a taking of their land. The court reasoned that

> ground water, as defined in § 46-657, is owned by the public, and the only right held by an overlying landowner is in the use of the ground water. [Citation omitted.] Furthermore, *placing limitations upon withdrawals of ground water in times of shortage is a proper exercise of the State's police power.*[30]

In *Keating v. Nebraska Public Power Dist.*,[31] the Eighth Circuit applied the legal reasoning set forth in *Spear T Ranch* and found that the appellants' permits to use surface water in the Niobrara Watershed created property interests that were limited by the "rights granted by the permit and is subject to

---

[26] *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005).

[27] *Id.* at 185, 691 N.W.2d at 127.

[28] *Id.*

[29] *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d 642 (1994).

[30] *Id.* at 313, 512 N.W.2d at 652 (emphasis supplied).

[31] *Keating v. Nebraska Public Power Dist.*, 660 F.3d 1014, 1018 (8th Cir. 2011).

constraints articulated by the permit." The court then held that "when the DNR determines that the watershed no longer has the capacity to supply all permit holders, appellants no longer have a legitimate claim of entitlement to use the surface water and thus do not suffer a deprivation of a property right."[32]

The Eighth Circuit reasoned that on the face of the permits, the holders of permits "'may be denied the use of water during times of scarcity.'"[33] Furthermore, "[u]nder Nebraska law, the DNR is charged with administering the prior appropriation system, which necessarily requires the DNR to determine the capacity limits of a given stream and to determine what restrictions must be imposed to enforce the appropriation system."[34] Therefore, since "the issuance of Closing Notices does not impact the property right bestowed by the permit to use the surface water when there is sufficient capacity, the appellants are not deprived of that property right."[35]

[8] In the current cases, the DNR determined that 2013 and 2014 constituted a water short period and it decreased allocation according to its predictions. We reject the appropriators' argument that the Compact is an inferior use to the use rights given to the appropriators under their permits. The U.S. Supreme Court held that the "Compact, having received Congress's blessing, counts as federal law."[36] As federal law, the allocations set forth under the Compact are the supreme law in Nebraska and the DNR must ensure Nebraska remains within its allocation under the Compact. Therefore, the appropriators' right to use water is subject to the superior obligation of the State to ensure compliance with the Compact.

While Nebraska law treats ground water differently from stream water, and there is no evidence in the record whether

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Kansas v. Nebraska, supra* note 2, 135 S. Ct. at 1053.

the permits articulated constraints on their face, *Spear T Ranch* is instructive in the current case. This court's holding in *Spear T Ranch* shows the limits to a property right to water appropriation under Nebraska law. Because of the limitations of a "use" property right, certain causes of action are not available for ground water, "'at least not prior to capture.'"[37] *Bamford* similarly concerns ground water, but it is applicable in the current case because it indicates that the State has a right to place restrictions on water usage during water short periods.

The right to use stream water is a "vested right," but it is inherently "subject to the law at the time the vested interest was acquired and such reasonable regulations subsequently adopted by virtue of the police power of the state."[38] We find that the DNR's decisions to decrease allocations in 2013 and 2014 were affirmative decrees which make explicit what already inheres in the title itself.[39] Based on our reasoning in *Bamford*, we hold that under the Compact and the applicable Nebraska statutes mentioned above, placing "limitations upon withdrawals" during a year which the DNR predicted would be a water short year is a "proper exercise of the State's police power."[40] In this case, there is no suggestion that the DNR has exercised this power arbitrarily, capriciously, or unreasonably.

Under the Act and the FSS set forth in *Kansas v. Nebraska*,[41] the DNR must not administer water in "real time" to ensure that the percentage allotted to Nebraska is met. Rather, the DNR is obligated only to ensure that Nebraska "will remain

---

[37] See *Spear T. Ranch v. Knaub, supra* note 26, 269 Neb. at 185, 691 N.W.2d at 127.

[38] *State v. Birdwood Irrigation District, supra* note 15, 154 Neb. at 55, 46 N.W.2d at 887.

[39] See *Lucas v. South Carolina Coastal Council, supra* note 12.

[40] See *Bamford v. Upper Republican Nat. Resources Dist., supra* note 29, 245 Neb. at 313, 512 N.W.2d at 652.

[41] *Kansas v. Nebraska, supra* note 2.

in compliance with" the Compact.[42] Therefore, we agree with the district court that the DNR fulfilled its duties under the Compact and Nebraska statutes, which are within the reasonable exercise of the State's police power and are within the DNR's jurisdiction over streamflow administration. The DNR applied the limits under the Compact to the appropriators' permits, which was a property interest subject to such reasonable regulations by the State. Therefore, the appropriators have not been deprived of a compensable property interest due to the stream water regulations by the DNR.

### (b) Whether DNR's Regulation Amounts to Permanent Physical Invasion

The appropriators next argue that the DNR's regulatory actions amount to a permanent physical invasion of their property and that such regulation deprives them of all economically beneficial use of that property.

We turn first to the appropriators' contention that the DNR's regulatory actions amount to a permanent physical invasion of their property. The appropriators rely on several cases to support this contention. One such case is *Casitas Mun. Water Dist. v. U.S.*,[43] in which the Federal Circuit held that "the government-caused diversion" of water away from the plaintiff's land in which the government "directly appropriated [the plaintiff's] water for its own use" should be analyzed as a physical taking. The court further held that "[w]here the government plays an active role and physically appropriates property, the *per se* taking analysis applies."[44]

The appropriators cite *Garey v. Nebraska Dept. of Nat. Resources*[45] to support the proposition that the duty to pay

---

[42] § 46-715(4)(b).

[43] *Casitas Mun. Water Dist. v. U.S.*, 543 F.3d 1276, 1296 (Fed. Cir. 2008).

[44] *Id.* at 1295.

[45] *Garey v. Nebraska Dept. of Nat. Resources*, 277 Neb. 149, 759 N.W.2d 919 (2009).

just compensation applies to the right to use and derive profits from the water at issue here. In addition, they cite *Western Fertilizer v. City of Alliance*[46] and *Dishman v. Nebraska Pub. Power Dist.*[47] in support of their argument that they are entitled to compensation for the deprivation of their rights to use water for a beneficial purpose as a result of the Compact.

We find these cases to be inapplicable. *Casitas* does not address water appropriation subject to an interstate compact. The holding in *Casitas* applies when the "government plays an active role and physically appropriates property."[48] And, as discussed above, in the current case, the DNR did not appropriate property. Rather, the appropriators' property rights to use the water are subject to the DNR's enforcement of compliance with the Compact. Therefore, this case, and the other cases cited by the appropriators on this point, are not dispositive.

In addition, we note that *Garey* involves a property tax levy and the waters of the Basin, but does not address water rights in terms of a taking. Neither *Western Fertilizer* nor *Dishman* involve damages alleged to have been caused by decreased water appropriations as a result of a water compact. Therefore, we find that the DNR's regulation does not amount to a permanent physical invasion.

[9] We turn next to the appropriators' argument that they have been deprived of ""all economically beneficial use" of [their] property.'"[49] We find that the appropriators have not alleged facts that show they have been deprived of all economically beneficial use of their property due to the DNR's actions. As we held in *Bamford*, the inability to "withdraw enough

---

[46] *Western Fertilizer v. City of Alliance*, 244 Neb. 95, 504 N.W.2d 808 (1993).

[47] *Dishman v. Nebraska Pub. Power Dist.*, 240 Neb. 452, 482 N.W.2d 580 (1992).

[48] *Casitas Mun. Water Dist. v. U.S., supra* note 43, 543 F.3d at 1295.

[49] Brief for appellants at 18.

water to grow a corn crop" does not amount to being deprived of all economic use of the appropriators' land.[50]

Further, the appropriators have shown there was a decrease in production during the 2013 and 2014 growing seasons on the appropriators' land, but the data indicates there was still production on the land. It does not appear, as the appropriators allege, that the farmland has been converted into permanent "dryland" because of a "total deprivation of beneficial use of land for irrigation purposes."[51] We therefore reject the appropriators' contention that the DNR's regulation of stream water led to a deprivation of all economically beneficial use of their property. The appropriators' first assignment of error is without merit.

## 2. WHETHER ALLEGED FAILURE OF DNR TO CURTAIL GROUND WATER PUMPING RESULTS IN TAKING

The appropriators argue that because ground water and surface water are hydraulically connected, the DNR's failure to regulate ground water pumping depleted streamflow in the Basin and amounted to a taking. The appropriators contend that ground water pumping allows the State to do indirectly what it is forbidden to do directly. Conversely, the State and the DNR argue that the DNR has no authority to administer the Basin's ground water users for the benefit of surface water appropriators. The district court agreed that the DNR had no such authority and that the appropriators had not stated a claim for inverse condemnation.

[10] This court has consistently held that the DNR has no authority to regulate ground water. In *In re Complaint of Central Neb. Pub. Power*,[52] this court held that "the [DNR]

---

[50] *Bamford v. Upper Republican Nat. Resources Dist., supra* note 29, 245 Neb. at 314, 512 N.W.2d at 652.

[51] Brief for appellants at 32.

[52] *In re Complaint of Central Neb. Pub. Power, supra* note 14, 270 Neb. at 117, 699 N.W.2d at 378.

has no independent authority to regulate ground water users or administer ground water rights for the benefit of surface water appropriators." The court reasoned that "Nebraska has two separate systems for the distribution of its water resources: One allocates surface water, and the other allocates ground water."[53] Furthermore, "[t]he [DNR] regulates surface water appropriators, see [Neb. Rev. Stat.] § 61-201 et seq. [(Reissue 2009 & Cum. Supp. 2016)], and ground water users are statutorily regulated by the natural resources districts through the . . . Act . . . ."[54]

The Nebraska Constitution does not address the use of ground water, and historically, the regulation of ground water has been governed by the rule of reasonable use.[55] The court further stated:

> [T]he Legislature has not developed an appropriation system that addresses direct conflicts between users of surface water and ground water that is hydrologically connected. . . . [T]he lack of an integrated system was reinforced by the fact that different agencies regulate ground water and surface water.[56]

In *Spear T Ranch v. Nebraska Dept. of Nat. Resources*,[57] this court addressed whether a surface water appropriator had a claim against the DNR for failing to protect surface water appropriators from hydrologically connected ground water users. Spear T Ranch, Inc. (Spear T), claimed that the DNR had "negligently failed to protect its appropriations by controlling the amount of ground water taken from the [creek]."[58] This court declined to find that the DNR had a "duty which

---

[53] *Id.* at 116-17, 699 N.W.2d at 378.

[54] *Id*. at 117, 699 N.W.2d at 378.

[55] *Id.*

[56] *Id.* at 117-18, 699 N.W.2d at 378-79.

[57] *Spear T Ranch v. Nebraska Dept. of Nat. Resources*, 270 Neb. 130, 699 N.W.2d 379 (2005).

[58] *Id.* at 132, 699 N.W.2d at 381.

would require the [DNR] to resolve conflicts between surface water appropriators and ground water users."[59] We concluded that the DNR "has no common-law or statutory duty to regulate the use of ground water in order to protect Spear T's surface water appropriations."[60] Therefore, we held that the DNR's "action or inaction did not amount to a taking or damages as alleged by Spear T. Because Spear T had no property that was damaged or taken by the [DNR], Spear T could not assert a cause of action for inverse condemnation."[61]

The appropriators cite the Compact which, as the U.S. Supreme Court explained in *Kansas v. Nebraska*, requires that ground water pumping is counted toward water consumption permitted by the Compact.[62] As stated above, the DNR has jurisdiction over "all matters pertaining to water rights for irrigation, power, or other useful purposes except as such jurisdiction is specifically limited by statute."[63] Under § 46-715(b), the DNR regulation must "be sufficient to ensure that the state will remain in compliance with applicable state and federal laws and with any applicable interstate water compact or decree or other formal state contract or agreement pertaining to surface water or ground water use or supplies."[64]

However, as the State and the DNR argue, § 46-715 indicates that the DNR has jurisdiction over only surface water, while the natural resources districts have jurisdiction over ground water. Section 46-715 provides that the DNR and the natural resources districts "shall jointly develop an integrated management plan for such river basin, subbasin, or reach."[65] And, "[i]n developing an integrated management plan, the

---

[59] *Id.* at 136, 379, 699 N.W.2d at 384.

[60] *Id.* at 138, 699 N.W.2d at 385.

[61] *Id.* at 139, 699 N.W.2d at 386.

[62] See *Kansas v. Nebraska, supra* note 2.

[63] Neb. Rev. Stat. § 61-206(1) (Reissue 2009).

[64] § 46-715(4)(b).

[65] § 46-715(5)(b).

effects of existing and potential new water uses on existing surface water appropriators and ground water users shall be considered."[66] The "integrated management plan shall include . . . (c) one or more of the ground water controls authorized for adoption by natural resources districts pursuant to section 46-739; (d) one or more of the surface water controls authorized for adoption by the department pursuant to section 46-716."[67] Section 46-739 further outlines the authorized controls and procedures for the DNR to manage ground water.

Based on the terms of the FSS and the U.S. Supreme Court's opinion in *Kansas v. Nebraska*, Nebraska must account for stream flow depletion due to its ground water pumping.[68] The DNR has jurisdiction over "all matters pertaining to water rights for irrigation, power, or other useful purposes," but "such jurisdiction is specifically limited by statute."[69]

[11] We find that § 46-715 limits the DNR's jurisdiction to surface water. This court's opinions in *Spear T Ranch v. Nebraska Dept. of Nat. Resources*,[70] *In re Complaint of Central Neb. Pub. Power*,[71] and *Spear T Ranch v. Knaub*[72] provide further support that the DNR does not have jurisdiction over ground water due to Nebraska's "two separate systems for the distribution of its water resources."[73] Therefore, while the FSS requires that ground water be accounted for, this does not grant jurisdiction to the DNR over ground water. Instead, jurisdiction over ground water remains with the natural resources districts. We note that § 46-715(2)

---

[66] § 46-715(2).

[67] *Id.*

[68] See *Kansas v. Nebraska, supra* note 2.

[69] § 61-206(1).

[70] *Spear T Ranch v. Nebraska Dept. of Nat. Resources, supra* note 57.

[71] *In re Complaint of Central Neb. Pub. Power, supra* note 14.

[72] *Spear T Ranch v. Knaub, supra* note 26.

[73] See *In re Complaint of Central Neb. Pub. Power, supra* note 14, 270 Neb. at 117, 699 N.W.2d at 378.

requires natural resources districts to include "one or more of the ground water controls . . . pursuant to section 46-739" in an integrated management plan and to consider "the effects of existing and potential new water uses on existing surface water appropriators and ground water users." Because the DNR does not have jurisdiction to regulate ground water, it does not have the power or duty to regulate ground water. Therefore, we affirm the district court's conclusion that "an alleged failure to exercise such nonexistent power or duty does not give rise to a cause of action for inverse condemnation." The appropriators' second assignment of error is without merit.

## VI. CONCLUSION

The district court did not err in dismissing both of the appropriators' claims, because (1) the Compact, as federal law, supersedes the appropriators' property interests and (2) the DNR does not have a duty to regulate ground water; thus, a failure by the DNR to regulate ground water pumping that affects the Basin does not give rise to a cause of action for inverse condemnation.

AFFIRMED.