Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/19/2016 09:22 AM CST

OWEN L. DOTY ET AL., APPELLEES, V.
WEST GATE BANK, INC., A NEBRASKA
BANKING CORPORATION, APPELLANT.

___ N.W.2d ___

Filed February 19, 2016.    No. S-14-1060.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

4. **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.

5. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

6. **Trusts: Deeds: Statutes.** Because trust deeds did not exist at common law, the trust deed statutes are to be strictly construed.

7. **Statutes: Appeal and Error.** An appellate court does not consider a statute's clauses and phrases as detached and isolated expressions. Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.

8. **Statutes: Intent.** A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears.
9. **Trusts: Deeds: Liens: Security Interests.** Under Neb. Rev. Stat. § 76-1013 (Reissue 2009), an action to recover the balance due upon the obligation for which the trust deed was given as security does not include enforcement of liens upon or security interests in other collateral given to secure the same obligation.
10. **Trusts: Deeds: Limitations of Actions.** The running of the statute of limitations for an action under Neb. Rev. Stat. § 76-1013 (Reissue 2009) does not extinguish the balance due upon the underlying obligation.
11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Reversed and remanded with directions.

Gregory S. Frayser, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Joel G. Lonowski and Andrew K. Joyce, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellees.

Heavican, C.J., Connolly, Miller-Lerman, and Cassel, JJ., and Bishop, Judge.

Cassel, J.

## INTRODUCTION

In this appeal, we are asked to determine whether the 3-month statute of limitations[1] set forth in the Nebraska Trust Deeds Act[2] (Act) bars a bank from foreclosing on the bank's remaining collateral. We conclude that it does not. Our conclusion is consistent with the plain language of the Act, our

---

[1] See Neb. Rev. Stat. § 76-1013 (Reissue 2009).

[2] Neb. Rev. Stat. §§ 76-1001 to 76-1018 (Reissue 2009 & Cum. Supp. 2014).

previous interpretations of the same language, and the decisions in other states under similar provisions. We therefore reverse, and remand with directions.

## BACKGROUND

### Relevant Deeds and Notes

In 2002 and 2003, various members of the Doty family gave three deeds of trust to West Gate Bank, Inc. (Bank), as security for certain loans. Each deed of trust (DOT) conveyed a specific tract of real estate. The parties identify each DOT by the street name where the real estate is located. We follow the same convention. Owen L. Doty and Joy A. Doty executed and delivered the "Starr Street DOT." Owen, Joy, Clifford Doty, and Allison Doty executed and delivered the "Harwood Court DOT." And Ronald L. Doty and Angela J. Doty executed and delivered the "148th Street DOT."

The DOT's also secured future advances given by the Bank to those named in the DOT's. Later, the Bank advanced funds to Owen, Joy, Ronald, and Angela. This advance was documented by promissory note No. 3311257 (Note 257). (From this point forward, we refer to Owen, Joy, Ronald, and Angela collectively as "the Dotys.") The Dotys defaulted on Note 257, and so the Bank exercised its power of sale under the 148th Street DOT and applied the funds generated by the sale to Note 257. An unpaid balance remained on the note. Later, the Dotys brought a declaratory judgment action asking the district court to declare that the Bank was barred by § 76-1013 from recovering any amount still owed under Note 257.

While that action was pending before the district court, two other notes went into default and Owen and Joy sought to refinance the corresponding debts. At first, the Bank refused to release the Starr Street DOT and the Harwood Court DOT, asserting that those DOT's secured the balance remaining under Note 257.

Thereafter, the Dotys and the Bank executed a pledge and security agreement, a substitution of collateral agreement, and

an account control agreement whereby they granted the Bank a security interest in a deposit account. But one provision of the pledge and security agreement provided that "the Debtor disputes that any amount is owed under the Note." After the refinancing was completed, the other two notes were paid in full and the Bank released the Starr Street DOT and the Harwood Court DOT.

At oral argument, the Dotys conceded that if § 76-1013 did not extinguish Note 257, the debt would survive and be enforceable against the substituted collateral. Thus, they agreed that this court needed to focus only on the interpretation of § 76-1013 by the district court.

## District Court's Decision

The Dotys and the Bank filed cross-motions for summary judgment in the declaratory judgment action. In November 2014, the district court granted the Dotys' motion and denied the Bank's. It concluded that the Bank was barred by the 3-month statute of limitations in § 76-1013 "from taking any action whatsoever to collect any amounts it believes it is due on Note 257." Section 76-1013 states:

At any time within three months after any sale of property under a trust deed, as hereinabove provided, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed and the amount for which such property was sold and the fair market value thereof at the date of sale, together with interest on such indebtedness from the date of sale, the costs and expenses of exercising the power of sale and of the sale. Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. The court shall not render judgment for more than the amount by which the amount of the indebtedness with interest and the costs

and expenses of sale, including trustee's fees, exceeds the fair market value of the property or interest therein sold as of the date of the sale, and in no event shall the amount of said judgment, exclusive of interest from the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured thereby, including said costs and expenses of sale.

The Bank argued that § 76-1013 applies only to deficiency actions, not nonjudicial foreclosures on separate collateral. The district court declined to find a distinction between deficiency actions and nonjudicial foreclosures, concluding that the Bank's argument is "not supported by any meaningful distinction between the two types of actions or the text of Section 76-1013."

The district court also examined the policy behind the Act, which we discussed in *Pantano v. Maryland Plaza Partnership*.[3] It noted that in *Pantano*, we said, "'In the world of deficiency judgments, [§ 76-1013] represents a departure from tradition'" because "'[t]raditionally, the amount of a deficiency judgment was the total indebtedness minus the price paid at public sale.'" This traditional formula benefited creditors, who "'could radically underbid a valuable property, take title, and then sue the debtor for deficiency.'" Section 76-1013 prevents this outcome, because it requires the district court to calculate the deficiency owed based upon the fair market value (hereinafter FMV) of the foreclosed property. Therefore, "'[a] creditor gains no advantage by underbidding . . . .'"

Based upon these statements in *Pantano*, the district court concluded that the *Pantano* court and the Legislature "were clearly concerned with debtors obtaining a credit against their debts for the FMV of property sold under the Act, not just

[3] *Pantano v. Maryland Plaza Partnership*, 244 Neb. 499, 507 N.W.2d 484 (1993).

the sale price." It declared that if the Bank seeks to recover a deficiency, "regardless of whether that amount is sought against the debtor[s] personally or their property, it must comply with the Act and bring an action so that the process is overseen by the courts and the [Dotys are] given credit for" the FMV of their property.

The district court concluded that because the Bank did not bring an action within the limitations period, "receipt of the proceeds of the trustee's auction constitutes payment in full of Note 257." It reasoned that because 3 months had passed since the sale in this case, "it cannot be judicially determined how much should have been subtracted from Note 257 as a result of the sale." And because "[a] creditor cannot collect an amount of money which cannot be known," the Bank cannot recover any amount owed under Note 257.

The Bank filed a timely appeal, which we moved to our docket.[4]

## ASSIGNMENTS OF ERROR

Although the Bank makes numerous assignments of error, we distill and combine them for analysis. Essentially, the Bank assigns that the district court erred in (1) concluding that the Bank was required to seek a deficiency judgment under § 76-1013 before resorting to its remaining collateral and (2) concluding that the debt owed on Note 257 is considered paid in full because the statute of limitations for an action pursuant to § 76-1013 has expired. Although the Bank also assigns that the district court erred in "concluding that each [DOT] is not a separate and distinct contract," we do not reach this issue.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

genuine issue as to any material fact or as to the ultimate infer-
ences that may be drawn from those facts and that the moving
party is entitled to judgment as a matter of law.[5] In reviewing
a summary judgment, an appellate court views the evidence in
a light most favorable to the party against whom the judgment
is granted and gives such party the benefit of all reasonable
inferences deducible from the evidence.[6]

[3] Statutory interpretation is a question of law, which an
appellate court resolves independently of the trial court.[7]

[4] When a declaratory judgment action presents a question
of law, an appellate court has an obligation to reach its conclu-
sion independently of the conclusion reached by the trial court
with regard to that question.[8]

## ANALYSIS

### § 76-1013 Inapplicable

The Bank admits that it is barred from filing an action for
a deficiency judgment by the 3-month statute of limitations
in § 76-1013. But it argues that the running of the statute of
limitations for a deficiency judgment does not prevent it from
resorting to the other collateral securing Note 257. It points
to the statute's use of the phrase "an action" and argues that
phrase refers only to deficiency actions filed in court. It also
cites several cases where we have characterized § 76-1013 as
applicable to deficiency actions.

[5,6] We begin by examining the text of § 76-1013. In
discerning the meaning of a statute, a court must determine
and give effect to the purpose and intent of the Legislature as
ascertained from the entire language of the statute considered

---

[5] *Board of Trustees v. City of Omaha*, 289 Neb. 993, 858 N.W.2d 186
(2015).

[6] *Id.*

[7] *State v. Mendoza-Bautista*, 291 Neb. 876, 869 N.W.2d 339 (2015).

[8] *Board of Trustees v. City of Omaha, supra* note 5.

in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.[9] But because the Act made a change in common law, we strictly construe the statutes composing the Act, as have previous courts interpreting the Act.[10] Thus, because trust deeds did not exist at common law, the trust deed statutes are to be strictly construed.[11]

Although we set forth the entire statute above, we reiterate the most relevant portions:

At any time within three months after any sale of property under a trust deed, . . . an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed and the amount for which such property was sold and the [FMV] thereof at the date of sale . . . . Before rendering judgment, the court shall find the [FMV] at the date of sale of the property sold.

By these plain terms, § 76-1013 applies only to "an action" commenced after any sale of property under a trust deed. The statute says nothing about any step that does not constitute "an action."

[7] Thus, we must determine what "an action" means. We make that determination by examining the language of the statute itself. We do not consider a statute's clauses and phrases as detached and isolated expressions.[12] Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.[13]

---

[9] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[10] *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

[11] *Id.*

[12] *Fisher v. PayFlex Systems USA, supra* note 9.

[13] *Id.*

Here, § 76-1013 authorizes "an action" and provides that "in such action the complaint shall" be filed with the district court. It then requires the district court to render a judgment. Taken together, these references to a complaint and a judgment clearly convey that "an action" encompasses only suits resting upon a complaint and filed in court. This is particularly true in light of our civil code, which abolished all forms of actions and suits and substituted "but one form of action."[14] The Legislature presumably understood the specific meaning conveyed by its choice of words.[15] And the Legislature's use of this terminology suggests that it did not intend for this provision to govern nonjudicial foreclosures, which require neither a complaint nor a judgment to go forward.

[8] This reading is reinforced by the Act's use of the term "an action" in another provision, which states:

> The *trustee's sale* of property under a trust deed shall be made within the period prescribed in section 25-205 for the *commencement of an action* on the obligation secured by the trust deed unless the beneficiary elects to foreclose a trust deed in the manner provided for by law for the *foreclosure of mortgages* on real estate . . . in which case the statute of limitations for the commencement of *such action* shall be the same as the statute of limitations for mortgages . . . .[16]

This language supports our reading of § 76-1013 in two ways. First, it distinguishes a "trustee's sale" and "an action on the obligation secured by the trust deed." It does not call the trustee's sale "an action on the deed." It calls it a sale. This suggests that the Legislature recognized that a trustee's sale, which is a nonjudicial foreclosure, and "an action" are two different creatures of law. Second, it uses "action" to refer

---

[14] Neb. Rev. Stat. § 25-101 (Reissue 2008).

[15] See *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006).

[16] § 76-1015 (emphasis supplied).

to mortgage foreclosure proceedings, which do require court action.[17] Thus, § 76-1015 uses "action" in the same way as § 76-1013—to refer to a civil action in a court of competent jurisdiction.[18] A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears.[19]

This reading of § 76-1013 is consistent with our decisions in prior cases. Although we have never addressed whether a non-judicial foreclosure constitutes "an action" under § 76-1013, we have consistently characterized § 76-1013 as applicable to deficiency actions filed in court. In *Mutual of Omaha Bank v. Murante*,[20] we said that the Act "applies to actions for deficiencies on the obligation for which a [DOT] was given as security." And in *First Nat. Bank of Omaha v. Davey*,[21] we stated that "the language of § 76-1013 demonstrates that the statute's applicability is limited to deficiency actions brought after non-judicial foreclosure by a trustee."

Finally, decisions from other jurisdictions support our analysis. We discuss two cases in detail, one from Utah and another from California, before summarizing similar decisions from other states.

The Utah decision is particularly applicable, because Utah has a statute very similar to § 76-1013.[22] In *Phillips v. Utah State Credit Union*,[23] a debtor obtained a loan from a lender to purchase certain real property. As security, the debtor gave

---

[17] See Neb. Rev. Stat. § 25-2141 (Reissue 2008).

[18] See § 25-101.

[19] *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 281 N.W.2d 762 (1979).

[20] *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 751, 829 N.W.2d 676, 681 (2013).

[21] *First Nat. Bank of Omaha v. Davey, supra* note 10, 285 Neb. at 843, 830 N.W.2d at 69.

[22] See Utah Code Ann. § 57-1-32 (LexisNexis 2010).

[23] *Phillips v. Utah State Credit Union*, 811 P.2d 174 (Utah 1991).

the lender a note and trust deed to the property. As additional security, the debtor assigned to the lender a note and mortgage which he owned as mortgagee. The debtor defaulted, and the lender sold the real property under the trust deed. After the sale, a balance of $22,566.30 remained.

The debtor later sued the lender under Utah's 3-month statute of limitations provision, seeking a declaration that the lender was prohibited from recovering any portion of the remaining balance. Utah's statute of limitations provision was nearly identical to § 76-1013. It provided, in relevant part:

> "At any time within three months after any sale of property under a trust deed . . . an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed . . . ."[24]

The trial court concluded that because the lender did not bring a deficiency action against the debtor within 3 months, the lender was prohibited from proceeding against the additional security assigned by the debtor.

The Utah Supreme Court reversed. It observed that the lender did not seek a deficiency judgment against the debtor, but, rather, "merely sought to retain its additional security."[25] And it stated that the lender's retention and use of its additional security was not "the type of 'action' against [the debtor] which is prohibited by" the 3-month statute of limitations provision.[26] It concluded:

> [W]here a creditor takes more than one item of security upon an obligation secured by a trust deed, the creditor is not precluded from making use of that additional security

---

[24] *Id*. at 176 n.2.

[25] *Id*. at 178.

[26] *Id.*

merely because the creditor has not sought a deficiency judgment within three months of a nonjudicial sale of one of the items covered by the trust deed property, nor is the creditor required to seek a deficiency judgment . . . in order to maintain its right to the additional security, so long as the security is applied toward the debt owed on the original loan.[27]

The Supreme Court of California also reached the same result under similar facts and a similar statute. In *Dreyfuss v. Union Bank of California*,[28] the debtors defaulted on a loan secured by three separate DOT's covering three parcels of real property. The creditor conducted successive nonjudicial fore-closures on the properties without seeking a judicial determination of the FMV of the properties sold.

The debtors sued, claiming that FMV determinations were required under California's antideficiency provision, which provides in part:

> Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a [DOT] was given as security, following the exercise of the power of sale in such [DOT] the plaintiff shall set forth in his or her complaint the entire amount of the indebtedness which was secured . . . . Before rendering any judgment the court shall find the [FMV] of the real property . . . at the time of sale.[29]

The California Supreme Court concluded that the provision is not implicated "when a creditor merely exercises the right to exhaust all of the real property pledged to secure an obligation."[30] It noted that in the past, it has held that "'[t]he

---

[27] *Id.*

[28] *Dreyfuss v. Union Bank of California*, 24 Cal. 4th 400, 11 P.3d 383, 101 Cal. Rptr. 2d 29 (2000).

[29] Cal. Civ. Proc. Code § 580a (West 2011).

[30] *Dreyfuss v. Union Bank of California, supra* note 28, 24 Cal. 4th at 406, 11 P.3d at 386, 101 Cal. Rptr. 2d at 33.

giving of additional security for [a] note gives the right to exhaust such security . . . .'"³¹

Other courts have reached similar results. In *Hull v. Alaska Federal Sav. & Loan Ass'n*,³² the plaintiff-debtors argued that their lender's retention of pledged savings accounts constituted a "'further action or proceeding,'" which was prohibited under Alaska's antideficiency provision. The Supreme Court of Alaska disagreed, concluding that the "further action or proceeding" language covered only in-court proceedings. It did not bar the retention of additional security pledged on the underlying obligation. Similarly, in *Gardner v. First Heritage Bank*,³³ the Washington Court of Appeals concluded that a lender may foreclose on additional collateral to satisfy a balance owed under a note, despite that state's antideficiency statute. It stated that the lender was "merely exercis[ing] the right to exhaust all of the real property pledged to secure an obligation."³⁴

In the case before us, the district court construed "an action" very broadly. It seemed to conclude that a nonjudicial foreclosure constitutes "an action," stating that there is no "meaningful distinction" between deficiency actions and nonjudicial foreclosures in the text of § 76-1013. We disagree.

The plain language used—"an action"—is the language of a legal suit, not nonjudicial foreclosure. In a broad colloquial sense, a nonjudicial foreclosure might be characterized as an "action."³⁵ But this meaning would clearly conflict with

---

³¹ *Id.* at 409, 11 P.3d at 388, 101 Cal. Rptr. 2d at 35 (quoting *Freedland v. Greco*, 45 Cal. 2d 462, 289 P.2d 463 (1955)).

³² *Hull v. Alaska Federal Sav. & Loan Ass'n*, 658 P.2d 122, 124 (Alaska 1983).

³³ *Gardner v. First Heritage Bank*, 175 Wash. App. 650, 303 P.3d 1065 (2013).

³⁴ *Id.* at 668, 303 P.3d at 1074.

³⁵ See, e.g., Black's Law Dictionary 35 (10th ed. 2014) (defining "action" as "[t]he process of doing something").

the statute's plain terms. An appellate court attempts to give effect to each word or phrase in a statute and ordinarily will not read language out of a statute.[36]

[9] Thus, we hold that under § 76-1013, an action to recover the balance due upon the obligation for which the trust deed was given as security does not include enforcement of liens upon or security interests in other collateral given to secure the same obligation. Accordingly, § 76-1013 does not govern the Bank's right to exercise its powers of sale under the other DOT's or the other collateral which was substituted by agreement. It necessarily follows that § 76-1013's requirement of an FMV determination is inapplicable. The Bank may collect from the Bank's additional collateral without bringing an action for a deficiency under § 76-1013.

We agree with the district court that the Act's terms reflect the Legislature's concern that debtors receive credit for the FMV of their property. But the Legislature did not include a provision that requires an FMV determination in a situation such as this, where a lender pursues successive nonjudicial foreclosures of trust deeds given to secure the same debt. We must give effect to the statute's plain terms, and we will not read into the Act requirements that are not there.[37]

Enforceable Debt

The district court held that the Dotys' obligation on Note 257 was paid in full. It reasoned that the Bank was required to get an FMV determination under § 76-1013 before executing on its additional collateral. And because the Bank did not do so, according to the district court, the amount owed on the debt cannot be determined.

As we explained above, the Bank was not required to obtain an FMV determination, because § 76-1013 does not apply to subsequent nonjudicial foreclosures against other collateral

---

[36] *Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012).

[37] See *State v. Frederick*, 291 Neb. 243, 864 N.W.2d 681 (2015).

given to secure the same obligation. Therefore, the FMV determination requirement is irrelevant here, and the district court's reasoning is erroneous.

With the correct understanding in mind, we must decide whether the running of the statute of limitations on a personal deficiency action renders the underlying debt paid in full or otherwise unenforceable. We conclude that it does not.

We first turn to our interpretation of § 76-1013 in *Mutual of Omaha Bank v. Murante*.[38] There, a lender sought to recover from a guarantor, even though § 76-1013 prohibited it from recovering against the debtors. We stated that where the statute of limitations in § 76-1013 has expired, "[t]he debt as evidenced by the notes has not been extinguished."[39] We also quoted our opinion in *Department of Banking v. Keeley*,[40] where we said: "'If the principal obligation is not void . . . but is merely unenforceable against the debtor because of some matter of defense which is personal to the debtor,'" the guarantor will not be able to defeat the action.[41] We concluded that the lender could recover the debt from the guarantor.

We note also that we have reached the same conclusion in the area of mortgages. We stated in 1901 that "[t]he right to foreclose [a] mortgage exists after the note it was given to secure is barred by the statute of limitations."[42] More recently, in 1971, we affirmed that a lender may foreclose on a mortgage, even though the statute of limitations on the promissory note has expired.[43]

---

[38] *Mutual of Omaha Bank v. Murante, supra* note 20.

[39] *Id.* at 753, 829 N.W.2d at 682.

[40] *Department of Banking v. Keeley*, 183 Neb. 370, 160 N.W.2d 206 (1968).

[41] *Mutual of Omaha Bank v. Murante, supra* note 20, 285 Neb. at 753, 829 N.W.2d at 682 (quoting *Department of Banking v. Keeley, supra* note 40).

[42] *Omaha Savings Bank v. Simeral*, 61 Neb. 741, 743, 86 N.W. 470, 471 (1901).

[43] *J. I. Case Credit Corp. v. Thompson*, 187 Neb. 626, 193 N.W.2d 283 (1971).

Our approach appears to be the majority one. According to Williston on Contracts, "most courts have held that the statute of limitations merely bars the remedy of the creditor or other plaintiff but does not totally discharge the right."[44] Under this majority approach, "the creditor remains entitled after the statute has run to use any other means of collecting its debt than a direct right of action. Therefore, any security by way of lien or mortgage may be utilized to collect or recover on the claim."[45]

[10] Consistent with *Mutual of Omaha Bank v. Murante*,[46] we conclude that the running of the statute of limitations for an action under § 76-1013 does not extinguish the balance due upon the underlying obligation. Accordingly, we conclude that the balance due on Note 257 was not void, extinguished, or considered paid in full. Instead, the running of the statute of limitations under § 76-1013 merely rendered the debt unenforceable in a personal deficiency action. The debt still exists, and the Bank may enforce it by collecting from the Bank's remaining collateral.

## Separate and Distinct Contracts

[11] The Bank assigns that the district court erred in "concluding that each deed of trust is not a separate and distinct contract." We need not reach this issue, because it is not necessary to our resolution of this appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[47]

## CONCLUSION

For the reasons discussed above, we conclude that although the district court correctly determined that § 76-1013 precludes

---

[44] 31 Samuel Williston, A Treatise on the Law of Contracts § 79:3 at 259 (Richard A. Lord ed., 4th ed. 2004).

[45] *Id.* at 260-61.

[46] *Mutual of Omaha Bank v. Murante, supra* note 20.

[47] *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015).

the Bank from bringing a personal deficiency action against the Dotys for the balance owed under Note 257, it incorrectly determined that § 76-1013 applies to successive foreclosures on remaining collateral. Therefore, the district court erred in granting the Dotys' motion for summary judgment and in denying the Bank's. Accordingly, we reverse, and remand with directions to the district court to grant the Bank's motion for summary judgment.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, McCORMACK, and STACY, JJ., not participating.