Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/16/2018 08:13 AM CDT

Rodney Cappel et al, appellants and cross-appellees, v.
State of Nebraska Department of Natural Resources,
an executive department and agency of the State
of Nebraska, and Jeff Fassett, in his official
capacity as director of the Department
of Natural Resources, appellees
and cross-appellants.

___ N.W.2d ___

Filed December 22, 2017.    No. S-16-1037.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Actions: Public Officers and Employees.** A suit against a state official in his or her official capacity is not a suit against the official, but, rather, a suit against the official's office.
4. **Actions.** A suit against a state agency is a suit against the State.
5. **Eminent Domain: Words and Phrases.** Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.
6. **Actions: Eminent Domain.** The initial question in an inverse condemnation case is whether a compensable taking or damage has occurred.
7. **Eminent Domain: Property.** A takings analysis begins with an examination of the nature of the owner's property interest.
8. **Waters: Property.** The right to appropriate surface water is not an ownership of property. Instead, the water is viewed as a public want and the appropriation is a right to use the water.

9. **Irrigation Districts: Waters.** Rights of irrigation in Nebraska are limited in their scope by the language of their creation and subject to reasonable regulations subsequently adopted by virtue of the police power of the State.

10. **Constitutional Law: Actions: Legislature.** Neb. Const. art. V, § 22, provides that the State may sue and be sued and that the Legislature shall provide by law in what manner and in what courts suits shall be brought.

11. **Constitutional Law: Legislature: Immunity: Waiver.** Neb. Const. art. V, § 22, permits the State to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe.

12. ____: ____: ____: ____. Neb. Const. art. V, § 22, is not self-executing, but instead requires legislative action for waiver of the State's sovereign immunity.

13. **Immunity: Waiver.** Waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implications from the text as will allow no other reasonable construction.

14. **Jurisdiction: Appeal and Error.** An appellate court has an independent duty to decide jurisdictional issues on appeal, even if the parties have not raised the issue.

15. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.

16. **Jurisdiction: Appeal and Error.** When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks the power to adjudicate the merits of the claim.

17. **Taxation: Irrigation Districts: Waters.** Neb. Rev. Stat. § 46-141 (Reissue 2010) allows taxpayers to request a refund for water taxes paid by filing a request in the office of the secretary of the district.

18. **Taxation: Waters.** Neb. Rev. Stat. § 2-3226.05(2) (Cum. Supp. 2016) allows taxpayers to request a local refund of occupation taxes after following the applicable procedures.

Appeal from the District Court for Hitchcock County: James E. Doyle IV, Judge. Affirmed in part, and in part reversed and remanded with directions.

Stephen D. Mossman, Ryan K. McIntosh, and Patricia L. Vannoy, of Mattson Ricketts Law Firm, for appellants.

Douglas J. Peterson, Attorney General, Justin D. Lavene, and Kathleen A. Miller for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

KELCH, J.

## INTRODUCTION

This case involves the administration of the Republican River Compact. Appropriators Rodney Cappel; Steven Cappel; Cappel Family Farm LLC; C & D Cappel Farms, L.L.C.; and Midway Irrigation, Inc. (collectively the Cappels) appeal the order of the district court for Hitchcock County that dismissed their complaint without leave to amend, upon the motion of the State of Nebraska Department of Natural Resources and Jeff Fassett, its director (collectively the DNR). The DNR cross-appeals. We hold that the Cappels failed to state a claim for inverse condemnation, but we conclude that the district court erred in failing to find that it lacked subject matter jurisdiction over the Cappels' remaining claims for relief under 42 U.S.C. § 1983 (2012), due process, and restitution, which were barred by sovereign immunity. Therefore, we affirm in part, and in part reverse and remand with directions to dismiss for lack of subject matter jurisdiction those claims barred by sovereign immunity.

## BACKGROUND

The Cappels own farmland throughout the Republican River Basin. They irrigate their farmland with ground water from wells located within the Middle Republican Natural Resources District and receive surface water appropriations from the Frenchman Valley Irrigation District. As such, they are subject to the integrated management plan and associated surface water controls adopted jointly by the Middle Republican Natural Resources District and the DNR.

The administration of water in the Republican River Basin is subject to the Republican River Compact (hereinafter the Compact), which is an interstate compact between Nebraska, Kansas, and Colorado that regulates the consumption of the basin's waters and allocates a certain amount of surface water

to each state, depending on the amount of surface water available in the basin each year. The DNR is responsible for ensuring Nebraska's compliance with the Compact.

In January 2013 through 2015, the DNR's hydrologic forecast indicated that without essential action, Nebraska's consumption of water from the Republican River would exceed its allocation under the Compact. Accordingly, the DNR declared a "Compact Call Year" and issued closing notices to holders of surface water permits for each of those years. As a result of the closing notices, the Cappels were barred from using the surface waters of the Republican River and its tributaries to irrigate their crops. However, the Cappels were still obligated to pay the costs associated with owning irrigated acres, including taxes and assessments. And DNR did not curtail ground water use, which allegedly continued to deplete streamflow in the Republican River Basin to the future detriment of surface water users. The Cappels themselves had drilled new irrigational wells because they could not irrigate their land with surface water.

The Cappels did not challenge the DNR's 2013 through 2015 compact call year orders or corresponding closing notices as provided in Neb. Rev. Stat. § 61-206 (Reissue 2009). Instead, in December 2015, they filed a verified complaint against the DNR in the district court for Hitchcock County, followed by a verified amended complaint. They alleged a cause of action under 42 U.S.C. § 1983, due to deprivation of their property rights and violations of their due process rights. The Cappels also alleged that they had been subject to an inverse condemnation in that the closing notices and administration of the Republican River amounted to an uncompensated physical and regulatory taking under Neb. Const. art. I, §§ 3 and 21, and the U.S. Const. amends. V and XIV. Further, the Cappels alleged that they had suffered damages when they were deprived of the benefits of condemnation proceedings, in violation of their due process rights, and when DNR allowed excessive ground water pumping to the detriment of the their surface water

appropriations. The Cappels sought reimbursement for occupation taxes paid to the Middle Republican Natural Resources District and water taxes paid to the Frenchman Valley Irrigation District, money damages, and restitution.

The DNR filed a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6), alleging lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Following a hearing, the district court issued a written order dismissing the amended complaint pursuant to § 6-1112(b)(6), without leave to amend. It determined beyond a doubt that the Cappels could plead no set of facts that would entitle them to relief under their theories of recovery and that amendment would be futile. Specifically, the district court found that it had subject matter jurisdiction, because the Cappels' claims were not barred by the State's sovereign immunity and therefore overruled the DNR's motion based on § 6-1112(b)(1). However, it determined that neither the closing notices nor the adopted integrated management plans amounted to a physical or regulatory taking. Additionally, the district court held that the closing notices and adopted plans did not violate the Cappels' due process rights and that the Cappels had failed to state a claim under 42 U.S.C. § 1983. Finally, the district court ruled that the Cappels were not entitled to restitution for taxes paid in 2013 through 2015.

The Cappels filed this appeal in the Nebraska Court of Appeals, and the DNR cross-appealed. We moved the case to our docket and denied the DNR's motion for summary affirmance.

ASSIGNMENTS OF ERROR

The Cappels assign, combined and restated, that the district court erred in holding that (1) the issuance of closing notices was not an exercise of eminent domain and did not constitute a physical or regulatory taking, (2) the DNR's administration of the Republican River did not constitute a regulatory taking, (3) the DNR did not deprive the Cappels of their due process

rights, (4) the Cappels failed to state a claim for relief under 42 U.S.C. § 1983, and (5) the Cappels were not entitled to restitution of occupation taxes levied against their property.

The DNR cross-appeals and assigns that the district court erred when it held that the Cappels' claims brought under 42 U.S.C. § 1983 were not barred by sovereign immunity.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo.[1] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[2]

## ANALYSIS

The Cappels brought claims (1) under 42 U.S.C. § 1983; (2) under article I, § 21, of the Nebraska Constitution and the 5th and 14th Amendments to the U.S. Constitution for alleged inverse condemnation; (3) under article I, § 3, of the Nebraska Constitution and the 5th and 14th Amendments to the U.S. Constitution for alleged violations of substantive and procedural due process rights; and (4) for restitution. We address the parties' assignments of error as they relate to each of these claims.

## 42 U.S.C. § 1983 ACTION

The Cappels' first claim against the DNR was brought under 42 U.S.C. § 1983. The district court dismissed this claim pursuant to § 6-1112(b)(6) for failure to state a claim upon which relief can be granted. The Cappels dispute this finding on appeal. On cross-appeal, the DNR contends that the Cappels' § 1983 claim is barred by sovereign immunity and that the district court erred by not dismissing it for lack of subject

---

[1] *Hill v. State*, 296 Neb. 10, 894 N.W.2d 208 (2017).

[2] *Id.*

matter jurisdiction pursuant to § 6-1112(b)(1). We agree with the DNR.

Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter.[3] Thus, the district court's jurisdiction to address whether the Cappels stated a claim upon which relief can be granted depended on whether the Cappels' § 1983 claim is barred by sovereign immunity.

Section 1983 provides a civil remedy for deprivations of federally protected rights, statutory or constitutional, caused by persons acting under color of state law.[4] But it does not necessarily provide a remedy for litigants seeking such remedy against a state.[5] The enactment of § 1983 did not abrogate the State's 11th Amendment immunity,[6] which bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the 14th Amendment to override that immunity.[7] Here, Nebraska has not waived its sovereign immunity with regard to § 1983 suits brought against it.[8] Nor has Congress exercised its power to override that immunity.[9] Therefore, the Cappels' § 1983 claim against the DNR, a state agency, and thus, the State,[10] is barred by sovereign immunity, and the district court erred in failing to dismiss it for lack of subject matter jurisdiction.

---

[3] See *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). See, also, *FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994).

[4] See *Amanda C. v. Case*, 275 Neb. 757, 749 N.W.2d 429 (2008).

[5] See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[6] See *id.* See, also, *Anthony K. v. State*, 289 Neb. 523, 855 N.W.2d 802 (2014).

[7] *Will v. Michigan Dept. of State Police, supra* note 5.

[8] See *Anthony K. v. State, supra* note 6.

[9] *Will v. Michigan Dept. of State Police, supra* note 5.

[10] See *Davis v. State, supra* note 3.

[3,4] This finding applies equally to the Cappels' § 1983 claim against Fassett, the director. A suit against a state official in his or her official capacity is not a suit against the official, but, rather, a suit against the official's office.[11] Accordingly, the Cappels' suit against Fassett is a suit against a state agency. Because a suit against a state agency is a suit against the State,[12] the Cappels' claim against Fassett is a claim against the State, and it too is barred by sovereign immunity. The district court, therefore, erred in failing to dismiss the § 1983 claim against Fassett for lack of subject matter jurisdiction.

## INVERSE CONDEMNATION

[5-7] The Cappels' second claim is for inverse condemnation. Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.[13] In this regard, the Cappels seek damages under the Fifth Amendment to the U.S. Constitution, which states: "[N]or shall private property be taken for public use, without just compensation," and under Neb. Const. art. I, § 21, which states: "The property of no person shall be taken or damaged for public use without just compensation therefor." The initial question in an inverse condemnation case is whether a compensable taking or damage has occurred.[14] And a takings analysis begins with an examination of the nature of the owner's property interest.[15]

In their complaint, the Cappels assert two takings: a physical taking of property rights to appropriate the water at issue

---

[11] *Will v. Michigan Dept. of State Police, supra* note 5.

[12] See *Davis v. State, supra* note 3.

[13] *Village of Memphis v. Frahm*, 287 Neb. 427, 843 N.W.2d 608 (2014).

[14] See *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013).

[15] See *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992).

and a regulatory taking of the economically viable use of land. The district court analyzed both allegations and found neither sufficient to constitute a "taking." Specifically, the district court found that the closing notices did not constitute a "taking" and that they were issued pursuant to the DNR's police power and not pursuant to its right of eminent domain. The Cappels assign these findings as error. But as set forth below, we conclude that the district court properly determined that the Cappels did not sufficiently allege that a compensable vested property right was taken or damaged. Thus, without any physical or regulatory taking, we need not consider whether the DNR was acting pursuant to its right of eminent domain.[16]

The issue of whether the Cappels sufficiently alleged a compensable vested property interest is controlled by our recent opinion in *Hill v. State*.[17] In *Hill*, water appropriators filed an inverse condemnation action against the State and the DNR after the DNR had issued orders and sent closing notices to water appropriators under circumstances similar to those presented here. We affirmed the district court's dismissal of the inverse condemnation claim, explaining that the appropriators failed to establish that a compensable vested property right was taken. We concluded that the appropriators' rights to use the water were subject to the Compact (the equivalent of federal law) and thus found that those rights were not a compensable property interest when limited for the purpose of ensuring Nebraska's compliance with the Compact. We further found that the DNR does not have a duty to regulate ground water; thus, a failure by the DNR to regulate ground water pumping that affects the Republican River Basin does not give rise to a cause of action for inverse condemnation.

---

[16] See *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

[17] *Hill v. State, supra* note 1.

Here, as in *Hill*, the DNR conducted an annual forecast and determined that without essential action, Nebraska's consumption of water from the Republican River would exceed its allocation under the Compact. Accordingly, the DNR declared a "Compact Call Year" and issued closing notices to holders of surface water permits for each of those years. Because these actions were taken for the purpose of ensuring Nebraska's compliance with the Compact, under *Hill*, the water rights at issue were not a compensable property interest and the Cappels' physical taking argument must fail.

Nor do we find merit in the Cappels' claim that the actions of the DNR constitute a regulatory taking, as there has been no deprivation of a compensable property right under *Hill*. In *Scofield v. State*,[18] we explained the types of regulatory takings recognized by the U.S. Supreme Court:

The U.S. Supreme Court in *Lingle v. Chevron U.S.A. Inc.*[, 544 U.S. 528, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005),] clarified the law surrounding regulatory takings claims and . . . identified two types of regulatory actions that constitute categorical or per se takings: "First, where government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation." Compensation is required for physical takings "however minimal the economic costs [they] entail[]," because they "eviscerate[] the owner's right to exclude others from entering and using her property—perhaps the most fundamental of all property interests." The "second categorical rule applies to regulations that completely deprive an owner of '*all* economically beneficial us[e]' of her property." The complete elimination of a property's value is the determinative factor in this category because the total deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation.

---

[18] *Scofield v. State*, 276 Neb. 215, 231-32, 753 N.W.2d 345, 358-59 (2008).

The Court in *Lingle* stated that outside these two relatively narrow categories, and the special context of land-use exactions, regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City*[, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978)]. Thus, under a *Penn Central* [*Transp. Co.*] inquiry, relief is possible from a regulatory taking which does not deprive the owner of all economic use of the property.

To determine whether a party may obtain relief from a regulatory taking, *Penn Central Transp. Co. v. New York City*[19] sets forth several factors designed to allow careful examination and weighing of all relevant circumstances.

The Cappels claim to have been deprived of the economic benefit of their property by a reduction in the production of crops, which means they have not alleged facts that show they have been deprived of *all* economically beneficial use of their property due to the DNR's actions. But the Cappels argue that they have pled a reduction in economic viability which would constitute a regulatory taking subject to a determination pursuant to *Penn Central Transp. Co*.

To support their position, the Cappels rely on *Scofield* and *Penn Central Transp. Co.*, where the *Penn Central Transp. Co.* factors were applied on appeal. These cases share a common theme: They both involved a regulation that directly affected private property, but neither involved an overriding federal law, such as the Compact. For example, in *Penn Central Transp. Co.*, the regulation limited how the owner could use its private property by prohibiting construction of an office building on a site designated as a landmark. In *Scofield*, the regulation changed private property previously used for recreation into a wildlife refuge.

---

[19] See *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).

[8,9] By contrast, the regulation in the instant case did not directly affect private property, but, rather, the use of a public resource. Water in Nebraska is a public resource dedicated for certain uses. And irrigation is one such use.[20] The right to appropriate surface water is not an ownership of property.[21] Instead, the water is viewed as a public want and the appropriation is a right to use the water.[22] As we noted in *Hill*, "'[r]ights of irrigation in the state . . . are . . . limited in their scope by the language of their creation'"[23] and subject to "'reasonable regulations subsequently adopted by virtue of the police power of the state.'"[24] Further, in *Keating v. Nebraska Public Power Dist.*,[25] the Eighth Circuit, recognizing water as a public resource, held that "when the DNR determines that the watershed no longer has the capacity to supply all permit holders, appellants no longer have a legitimate claim of entitlement to use the surface water and thus do not suffer a deprivation of a property right." Here, the regulation by the DNR restricts the Cappels' use of a public resource, i.e., water, in order to comply with the Compact, which has the status of federal law and is subject to the enforcement authority of the U.S. Supreme Court.[26]

We observe that the Cappels could still irrigate, albeit not from the river, and were still irrigating by use of ground water

---

[20] See Neb. Const. art. XV, §§ 4 and 5.

[21] *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005).

[22] *Id.*

[23] *Hill v. State, supra* note 1, 296 Neb. at 19, 894 N.W.2d at 215, quoting *In re Complaint of Central Neb. Pub. Power*, 270 Neb. 108, 699 N.W.2d 372 (2005).

[24] *Id.*, quoting *State v. Birdwood Irrigation District*, 154 Neb. 52, 46 N.W.2d 884 (1951).

[25] *Keating v. Nebraska Public Power Dist.*, 660 F.3d 1014, 1018 (8th Cir. 2011).

[26] See *Kansas v. Nebraska*, ___ U.S. ___, 135 S. Ct. 1042, 191 L. Ed. 2d 1 (2015).

when they filed suit. But this court is cognizant that it was beneficial for the Cappels to use surface water from the river and that the DNR restriction impacts their property, and we acknowledge the importance of water rights for the Cappels and other Nebraska farmers. Nonetheless, under the foregoing authority, we conclude that the Cappels have not shown that a compensable private property right, as contemplated in *Hill*, was taken or damaged by the order of the DNR and that therefore, they have not pled a physical or regulatory taking of private property.

Accordingly, the Cappels' assignments of error relating to their inverse condemnation claim are without merit.

## DUE PROCESS

For the Cappels' third and fourth claims, they seek damages for alleged violations of procedural and substantive due process under the Due Process Clauses of the 5th and 14th Amendments to the U.S. Constitution and Neb. Const. art. I, § 3.

[10-13] The Cappels' claim for a money judgment against the State under Neb. Const. art. I, § 3, fails by operation of Nebraska's sovereign immunity. Under the Nebraska Constitution, "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought."[27] This provision permits the State to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe.[28] It is not self-executing, however, but instead requires legislative action for waiver of the State's sovereign immunity.[29] Waiver of sovereign immunity will be found only where stated by the most express language of a statute or by such overwhelming

---

[27] Neb. Const. art. V, § 22.

[28] *Livengood v. Nebraska State Patrol Ret. Sys.*, 273 Neb. 247, 729 N.W.2d 55 (2007).

[29] *Id.*

implications from the text as will leave no room for any other reasonable construction.[30] The Cappels cite no authority indicating that Nebraska has waived its sovereign immunity. Nor were we able to find any. As a result, the Cappels cannot pursue a money judgment against the State based upon Neb. Const. art. I, § 3.

Regarding the Cappels' federal constitutional claims, we find that a due process violation does not create an independent cause of action for money damages. Although the Due Process Clauses in the 5th and 14th Amendments to the U.S. Constitution provide that no person shall be deprived of property without due process of law, no language in those clauses requires the payment of money damages if they are violated. Furthermore, several federal circuit courts have held that where Congress has provided 42 U.S.C. § 1983 for plaintiffs to obtain relief for the violation of constitutional rights, such is the exclusive remedy, and the plaintiff can no longer bring a direct cause of action under the U.S. Constitution.[31] We find these cases persuasive. Therefore, 42 U.S.C. § 1983 provided the Cappels with the exclusive remedy to obtain damages for alleged violations of procedural and substantive due process under the U.S. Constitution. But, as we have explained above, the Cappels' § 1983 claim is barred by sovereign immunity.

[14-16] Again, sovereign immunity is jurisdictional in nature.[32] While neither party has raised the issue of sovereign

---

[30] See *id*.

[31] See, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704 (9th Cir. 1992); *Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987), *vacated in part on other grounds* 872 F.2d 772 (6th Cir. 1989); *Hunt v. Robeson County Dept. of Social Services*, 816 F.2d 150 (4th Cir. 1987); *Ward v. Caulk*, 650 F.2d 1144 (9th Cir. 1981); *Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979); *Owen v. City of Independence, MO.*, 589 F.2d 335 (8th Cir. 1978), *reversed on other grounds* 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980), *and rehearing denied* 446 U.S. 993, 100 S. Ct. 2979, 64 L. Ed. 2d 850; *Cale v. Covington*, 586 F.2d 311 (4th Cir. 1978).

[32] See *Davis v. State, supra* note 3. See, also, *FDIC v. Meyer, supra* note 3.

immunity on appeal in the context of the Cappels' due process claims, this court has repeatedly held that an appellate court has an independent duty to decide jurisdictional issues on appeal, even if the parties have not raised the issue.[33] Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[34] When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks the power to adjudicate the merits of the claim.[35] Therefore, upon our own motion, we determine that the district court erred in failing to dismiss the Cappels' due process claims for lack of subject matter jurisdiction.

## Restitution

The Cappels' fifth and last claim is for restitution of occupation and water taxes levied against their property. On appeal, the Cappels assign that the district court erred in dismissing that claim.

[17,18] In essence, the Cappels' restitution claim is a claim for a money judgment against the State, which would be subject to Nebraska's sovereign immunity.[36] Here, the Cappels cite no authority showing that the Legislature has waived the DNR's sovereign immunity to allow it to be sued for reimbursement of taxes levied and collected by other entities. Instead, as the DNR points out, the Legislature has enacted Neb. Rev. Stat. § 46-141 (Reissue 2010), which allows taxpayers to request a refund for water taxes paid by filing a request in the office of the secretary of the irrigation district. And the Legislature has also enacted Neb. Rev. Stat. § 2-3226.05(2) (Cum. Supp. 2016), which allows taxpayers to request a local refund of occupation taxes after following the applicable procedures.

---

[33] *Davis v. State, supra* note 3.

[34] *Id.*

[35] *Id.*

[36] See *Livengood v. Nebraska State Patrol Ret. Sys., supra* note 28.

Thus, the Legislature has waived the State's immunity to the limited extent that it allows taxpayers to petition for exemption or a refund under the procedures set forth in §§ 46-141 and 2-3226.05(2). The Cappels have failed to allege that they have followed either of those procedures. Thus, the Cappels' claim for a money judgment against the State is barred by sovereign immunity, and we determine, sua sponte, that the district court erred in failing to dismiss the restitution claim for lack of subject matter jurisdiction.[37]

## CONCLUSION

For the foregoing reasons, we find that the Cappels' § 1983 claim, due process claims, and restitution claim are barred by sovereign immunity and that the district court erred by not dismissing them for lack of subject matter jurisdiction. Regarding the Cappels' remaining inverse condemnation claim, we conclude that the district court did not err in dismissing it for failure to state a claim upon which relief can be granted. Accordingly, we affirm in part, and in part reverse and remand to the district court with directions to dismiss for lack of subject matter jurisdiction the Cappels' § 1983 claim, due process claims, and restitution claim.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.

---

[37] See *Davis v. State, supra* note 3.