Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/18/2018 09:10 AM CDT

Amanda E. Cookson et al., appellants,
v. Bruce R. Ramge, director,
Nebraska Department of
Insurance, appellee.
___ N.W.2d ___

Filed February 23, 2018.    No. S-17-521.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Declaratory Judgments: Statutes: Appeal and Error.** When a declaratory judgment action presents a question of law, such as statutory interpretation, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.

3. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

4. ____: ____: ____. In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

5. **Insurance: Physician and Patient: Words and Phrases.** A copayment is generally understood as the amount an insured must pay in order to receive a medical service.

6. **Statutes: Appeal and Error.** An appellate court will not read into a statute a meaning that is not there.

7. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Mark D. Hill, Marnie A. Jensen, and Kamron T.M. Hasan, of Husch Blackwell, L.L.P., and, on brief, L. Steven Grasz, for appellants.

Douglas J. Peterson, Attorney General, and David A. Lopez for appellee.

John C. Hewitt and Jonathan J. Papik, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for amicus curiae America's Health Insurance Plans, Inc.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## INTRODUCTION

Health insurance policyholders brought a declaratory judgment action to determine whether a statute[1] allows insurance policies to impose higher copayments on policyholders when they obtain a covered service from a chiropractor rather than from a medical doctor. The district court concluded that it does. Because the plain language of the statute does not require insurance policies to charge identical copayments for a covered service regardless of the type of provider, we affirm.

## BACKGROUND

Currently, health insurance policies in Nebraska are permitted to charge a policyholder a higher copayment if covered

---

[1] Neb. Rev. Stat. § 44-513 (Reissue 2010).

services are obtained from a chiropractor rather than from a medical doctor. Three Nebraska residents and a nonprofit corporation (collectively Policyholders) filed a declaratory judgment action against the director of the Nebraska Department of Insurance. Policyholders requested an order declaring that § 44-513 precludes future approval of an insurance policy in Nebraska which requires a higher payment from a policyholder if the policyholder receives care for a covered service from a chiropractor rather than from a medical doctor, where both practitioners are in-network preferred providers and both are legally authorized to perform the service. Policyholders subsequently moved for summary judgment.

The district court overruled the motion for summary judgment and dismissed Policyholders' complaint. The court reasoned that the language of § 44-513 did not require insurers to pay the same dollar amount to all providers or to set equal copayments for policyholders. The court explained that the Legislature could have imposed equal copayment requirements if it wished to do so, and the court identified other statutes where the Legislature expressly invoked "'copayments' and other cost-sharing restrictions."

Policyholders filed a timely appeal, and we granted their petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

Policyholders assign that the district court erred in holding that § 44-513 allows insurance policies to discriminate against policyholders by charging a higher copayment if a policyholder obtains a covered service from a chiropractor rather than from a medical doctor.

## STANDARD OF REVIEW

[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the

ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2]

[2] When a declaratory judgment action presents a question of law, such as statutory interpretation, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[3]

## ANALYSIS

[3,4] The dispute centers on the meaning of § 44-513. In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.[4] In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[5]

We begin by examining the statutory language. Section 44-513 provides:

Whenever any insurer provides by contract, policy, certificate, or any other means whatsoever for a service, or for the partial or total reimbursement, payment, or cost of a service, to or on behalf of any of its policyholders, group policyholders, subscribers, or group subscribers or any person or group of persons, which service may be

---

[2] *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016).

[3] See *id.*

[4] *Id.*

[5] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

legally performed by a person licensed in this state for the practice of osteopathic medicine and surgery, chiropractic, optometry, psychology, dentistry, podiatry, or mental health practice, the person rendering such service or such policyholder, subscriber, or other person shall be entitled to such partial or total reimbursement, payment, or cost of such service, whether the service is performed by a duly licensed medical doctor or by a duly licensed osteopathic physician, chiropractor, optometrist, psychologist, dentist, podiatrist, or mental health practitioner. This section shall not limit the negotiation of preferred provider policies and contracts under sections 44-4101 to 44-4113.

To overly simplify: Whenever an insurer provides for a service, in whole or in part, the insured may obtain such service from one of the duly-licensed providers listed, so long as it is within the scope of the provider's license.

Policyholders argue that § 44-513 requires copayment parity, pointing to the statute's language stating that if a policy covers the "partial . . . cost of a service," the policyholder is "entitled to such partial . . . cost of such service."

[5,6] But the statute does not use the word "copayment"—a term often found in health insurance plans. A copayment is generally understood as the amount an insured must pay in order to receive a medical service[6]—not, as mentioned in the statute, an amount payable to or on behalf of an insured. An appellate court will not read into a statute a meaning that is not there.[7] Thus, we cannot read the statute as requiring an equal copayment.

---

[6] See, Neb. Rev. Stat. § 44-3296 (Reissue 2010); "co-payment," Oxford English Dictionary Online, http://www.oed.com/view/Entry/250769 (last visited Feb. 16, 2018).

[7] See *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014).

[7] The absence of "copayment" in § 44-513 is significant. The word "copayment" appears in 22 statutes[8] located in chapter 44 of the Nebraska Revised Statutes, governing "Insurance." Only the plural form of the word "copayment" appears in 11 additional statutes in the same chapter.[9] The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.[10] The omission of "copayment" in this insurance statute provides strong support for the position that the statute does not require equal copayments.

Other statutes demonstrate the Legislature's understanding of copayment parity. For example, one statute provides that a medical benefit contract "shall not impose upon any person who is a party to or beneficiary of the contract a fee or copayment not equally imposed upon any party or beneficiary utilizing a mail-order pharmacy."[11] Another dictates that the cost of an orally administered anticancer medication "shall not exceed the coinsurance or copayment that would be applied to any other cancer treatment involving intravenously administered or injected anticancer medications."[12] And yet another provides that coverage for an autism spectrum disorder shall not be "subject to dollar limits, deductibles, copayments, or

---

[8] See Neb. Rev. Stat. §§ 44-3,159(2) (Cum. Supp. 2016); 44-513.02(2)(a), 44-784, 44-785(2), 44-790(6)(a), 44-796(1)(a), 44-798(2)(a), and 44-7,102(2) (Reissue 2010); 44-7,104(2) and (3) (Cum. Supp. 2016); 44-32,110 (Reissue 2010); 44-4220.02(2) (Cum. Supp. 2016); and 44-4709(1)(b), 44-4717(5), 44-5418(20), 44-6827(13), 44-6829(3), 44-7003(11), 44-7103(14), 44-7203(12), 44-7303(21), and 44-8311(2)(c)(i) (Reissue 2010). See, also, § 44-3296.

[9] See Neb. Rev. Stat. §§ 44-789 and 44-792(4) (Reissue 2010); 44-7,106(3) (Cum. Supp. 2016); and 44-32,105, 44-32,120(3), 44-32,129(6), 44-4705(1)(c)(i), 44-5242.03, 44-6909.01, 44-7106(2)(b) and (n), and 44-7108(2) (Reissue 2010).

[10] *Kerford Limestone Co. v. Nebraska Dept. of Rev., supra* note 7.

[11] § 44-513.02(2)(a).

[12] § 44-7,104(2).

coinsurance provisions that are less favorable to an insured than the equivalent provisions that apply to a general physical illness under the policy."[13] Had the Legislature intended in § 44-513 to require an equal copayment regardless of the type of provider, it would have used language similar to that in the above statutes to evidence such an intent.

It appears that the statute was enacted to prevent discrimination in coverage by the insurer rather than discrimination in copayments charged to an insured. Policyholders argue that an insurance policy could effectively deny coverage for a chiropractor's services by requiring a copayment equal to the cost of the service. To begin with, that is not the situation before us. While this hypothetical danger may be conceivable, it does not allow us to read a meaning into a statute that is not there. Statutory language requiring an insurer to pay for a service regardless of provider is not the same as requiring an insured to pay an identical copayment regardless of provider. If an insurer attempted to impose a copayment of the full cost of a service as a subterfuge to avoid coverage, the gravamen of a complaint under the existing statute would be denial of equal coverage rather than inequality of copayments.

Because the statute is clear, we do not rely upon legislative history. But for the sake of completeness, we note that an examination of the history does not elucidate the matter. What is clear is that if an insurer provided for a service, then the policyholder was to have the right to use the services of one of the listed providers.[14] The legislative history did not manifest an intent to mandate copayment parity. It cited "insurance equality"[15] in one instance and contained several

---

[13] § 44-7,106(3).

[14] See Committee Statement, L.B. 487, Banking, Commerce and Insurance Committee, 77th Leg., 1st Sess. (Apr. 12, 1967).

[15] Introducer's Statement of Purpose, L.B. 196, Banking, Commerce and Insurance Committee, 80th Leg., 1st Sess. (Jan. 16, 1969).

references to prohibiting discrimination.[16] But throughout the entirety of the legislative history, the word "copayment," whether in singular or plural form, was not spoken. Because the statute's plain language defeats Policyholders' arguments, the issue of equality of copayments remains in the legislative arena.

## CONCLUSION

The plain language of § 44-513 does not prohibit an insurer from requiring different copayments for different types of providers. We affirm the judgment of the district court.

AFFIRMED.

WRIGHT, J., not participating.

---

[16] Banking, Commerce and Insurance Committee Hearing, L.B. 196, 80th Leg., 1st Sess. 10 (Jan. 27, 1969); Introducer's Statement of Purpose, L.B. 190, Banking, Commerce and Insurance Committee, 84th Leg., 1st Sess. (Jan. 27, 1975); Floor Debate, L.B. 190, 84th Leg., 1st Sess. 420 (Feb. 4, 1975).